PISCATAWAY APARTMENT ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. THE TOWNSHIP OF PISCATAWAY, DEFENDANT-RESPONDENT.

Argued October 7, 1974—Decided November 15, 1974.

*Mr. Frederick Mezey* argued the cause for plaintiff-appellant Piscataway Apartment Association, etc. (*Messrs. Mezey & Mezey,* attorneys).

*Mr. M. Roy Oake* argued the cause for defendant-respondent The Township of Piscataway.

PER CURIAM. This case comes to us on our grant of certification, 65 *N. J.* 299 (1974), of a reversal by the Appellate Division, 131 *N. J. Super.* 83 (1974), of a determination by the Law Division that sewerage rates being charged the apartment house owners belonging to plaintiff association by the defendant township were illegal, unreasonable and excessive.

The essentials of the complaint were: (1) apartment houses are charged annual rates on a flat fee basis per dwelling unit — the same rate which owners of smaller multiple family dwellings and of single-family dwellings pay — not-

withstanding the asserted fact that apartment house residents have a substantially lesser average sewerage flow than residents of single-family dwellings; (2) the apartment house owners had to build at their own expense connecting lines to the nearest municipal main, a factor which should receive allowance in any fair rate scale.

Plaintiff's main reliance in proving its assertions was the expert testimony of one John L. Aurnhammer. He constructed a rate-formulation plan which we will not here detail beyond the comments contained in the Appellate Division opinion and those set forth hereinafter. His conclusion was that the rates charged the members of the plaintiff association were excessive and should not have exceeded $35 per apartment unit per year as against the ordinance schedule of $70. There were opposing expert proofs on behalf of the township critical of Mr. Aurnhammer's rate method and justifying the reasonableness of the rates fixed by the ordinance.

The trial court found the plaintiff's proofs persuasive. It was also influenced by what it regarded as an undue surplus in the municipal sewer account. It concluded that charges against the apartment house owners exceeding $35 per unit were illegal and entered for the plaintiff judgment of recovery of the excess, over the period 1965-1970 inclusive, in the aggregate sum of $352,252, without interest. A judgment on the township's counterclaim for connection fees of $122,400 was reversed by the Appellate Division, without prejudice, but that ruling is not involved· on this appeal.

At the outset, the plaintiff's motion to submit a "certification" of its witness Aurnhammer is granted. The substance of this certificate is that certain supporting data referred to at the trial by this witness, which the Appellate Division thought had not been made available to the defendant, were in fact available to it. However, this correction of the possibly mistaken observation of the Appellate Division does not affect our conclusion that the judgment of that court in reversing the decision of the trial court was basically sound. We affirm essentially for the reasons stated

in the *per curiam* opinion of the Appellate Division, and for the additional reasons herewith briefly set forth.

As noted above, the gravamen of the complaint of the plaintiff association against the sewerage rates fixed by the Piscataway ordinance for apartment houses is bipartite in nature: (a) apartment dwelling units on the average produce less sewage flow than single family homes; (b) the apartment house owners belonging to plaintiff association paid for sewerage lines to connect their properties with the township mains while other property owners assertedly did not. Based on these assumptions, and others as to appropriateness of allocation of expenses of construction, financing and operation flowing therefrom, their expert witness constructed a complex rate scale, dependent on these assumptions to a substantial degree, which would have required apartment houses to pay only $35 per apartment, as against the annual $70 fee set by the ordinance alike for dwelling units in apartment houses, in smaller multiple rental buildings and one-family houses.

1. Preliminarily, it is our view that a municipally owned sewer utility may reasonably fix the same dwelling unit sewerage use charge for all single-family occupancy units, whether in large apartment houses, smaller multiple rental buildings or single-family residences. We see no compulsion for making rates dependent on specific or average sewerage flows in different categories of housing, particularly when, as here, the municipality is not operating through a sewerage authority pursuant to the particularized regulations of *N. J. S. A.* 40:14A–1 *et seq.* All that is required is classification of rates on a basis free from patent unreasonableness. See *N. J. S. A.* 40:63–7, *Crowe et al. v. Mayor and Coun. of the Tp. of Sparta,* 106 *N. J. Super.* 204, 206 (App. Div.), certif. den. 55 *N. J.* 79 (1969). This feature of the instant ordinance is not unreasonable. See *Oradell Village et als. v. Tp. of Wayne,* 98 *N. J. Super.* 8, 13 (Ch. Div. 1967), aff'd o.b. 101 *N. J. Super.* 403 (App. Div. 1968), aff'd o.b. 53 *N. J.* 496 (1969).

110

■ 2. There is no justification in this record for any inference that the municipality treated the apartment house owners discriminatorily in connection with extension of sewerage facilities to their properties. When the first municipal sewer system was built there were no apartment houses in Piscataway. The first sewers were laid in all streets wherein there were any improvements, and the connections all went to the curb lines. Had apartments then been present, they would presumably have received the same accommodation. After the sewer system was in, subsequent builders on unsewered streets were required to construct pipes to tie in with the nearest main. This applied whether they were apartment builders, home developers or industries. Members of the plaintiff association constructed their apartment houses without any complaint to the town of unfair or discriminatory treatment, *cf. Deerfield Estates, Inc. v. Tp. of East Brunswick,* 60 *N. J.* 115 (1972) (which requires that in extending an existing system all applicants be treated alike, *Id.* at 132), nor have they ever demanded a return of their expenditures made for this purpose.

■ Variations as between individual property owners with respect to what they paid to make connection with the existing municipal sewer system are not mandatory factors in a municipal rate plan. A rate ordinance which does not allow for such factors is not for that reason invalid so long as the classifications upon which rates are in fact based are free from arbitrariness in the light of all relevant considerations. The distinctions drawn by plaintiff's expert, founded basically upon such differences, between what he denominated "specific use" and "general use" sewer lines, do not impress us as necessarily relevant to the reasonableness of charges — certainly not to the extent of establishing the arbitrariness of the subject ordinance.

The trial court's stress upon the surplus in the sewerage account does not support its conclusion of invalidity of rates, particularly in light of the fact that township services in substantial measure were afforded the utility op-

erations without charge. In any event, if the surplus was excessive, it should be made available to all the sewerage customers, not the apartment houses alone.

We conclude the instant ordinance is valid. Judgment affirmed.

*For affirmance*—Chief Justice HUGHES, Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—7.

*For reversal*—None.