194 N.J. Super. 499 (1984)
477 A.2d 397
SETON COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1984.
Decided June 20, 1984.
*501 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
*502 Michael Dougherty, Assistant Corporation Counsel, argued the cause for appellant (John J. Teare, Newark Corporation Counsel, attorney; Michael Dougherty, on the brief).
Richard E. Schwartz of Washington, D.C. and Alan M. Dershowitz of Cambridge, Massachusetts, each admitted pro hac vice, argued the cause for respondent (Crummy, Del Deo, Dolan & Purcell, attorneys; Collier, Shannon, Rill & Scott of Washington, D.C. and Alan M. Dershowitz of counsel; Alan M. Dershowitz, Richard E. Schwartz, Michael R. Griffinger and Michele A. Giusiana, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This appeal arises from a judgment entered in an action brought by plaintiff Seton Company in 1981 challenging an ordinance adopted that year by defendant City of Newark fixing sewer user charges. Plaintiff asserted in the trial court that the ordinance by establishing arbitrary, unreasonable and discriminatory rates violated New Jersey law and the equal protection and due process clauses of the United States Constitution. Plaintiff further asserted that the ordinance took its property without just compensation. Following a nonjury trial, the judge in an oral opinion found the ordinance to be unlawful under state law. Thus he did not reach plaintiff's constitutional arguments. Newark has appealed the judgment entered on the opinion.
Plaintiff again urges that the ordinance is unlawful on both state and federal bases. Newark asserts that the ordinance does not violate state law. It further asserts that plaintiff's failure to cross-appeal from the judgment precludes this court from considering its constitutional arguments and in any event the ordinance is not unconstitutional.
The facts as developed at the trial are not in substantial dispute. Indeed many were stipulated. Plaintiff operates a leather tannery, a water-intensive business, in Newark and is *503 thus a large-scale user of the Newark sewerage system. The business has been in Newark since 1906 and as of the time of the trial had 431 employees in that city. In 1981 Newark contemplated adopting an ordinance increasing sewerage rates. In connection with this program a report prepared for Newark suggested an ordinance providing that users of municipal sewerage facilities be charged $10.50 for each 1,000 cubic feet of water supplied. The assumption underlying this charge was obviously that sewerage requiring treatment would be produced in direct proportion to water consumed and charges should be imposed proportionate to usage. Plaintiff objected to various officials in Newark that the rate would be unfair and unduly burdensome on large-scale users of water. Nevertheless on April 15, 1981 Newark adopted an ordinance essentially establishing this rate. The ordinance included no differential in charges based on the quality of sewerage produced nor was there any graduation or reduction in rate predicated on volume. The ordinance, however, provided for alternative methods of billing at a user's option. Thus a user could pay $10.50 per 1,000 cubic feet of measured sewerage discharged, or, subject to the approval of Newark's director of engineering, pay an appropriate charge based upon engineering studies supported by substantial evidence. Plaintiff has not elected to pay on either alternative basis and thus has been charged at the basic $10.50 per 1,000 cubic feet rate.
Newark's intention in adopting the $10.50 rate was to recover at least a portion of the costs incidental to operating its sewerage system, the principal one being the charge to it by the Passaic Valley Sewerage Commission for treating sewerage from Newark. Three types of sewerage requiring treatment by Passaic Valley are generated in Newark: discharges by users of the system, infiltration and inflow. Infiltration and inflow enter the system from sources other than discharges from users and are thus regarded as extraneous flows. While the percentage of fluids resulting from infiltration and inflow was not precisely established at trial, it may have been as high *504 as 50% of the flow from Newark. Other costs to Newark include operating and maintenance costs, debt service, a reserve to cover sewer user accounts in arrearage and costs for buildings owned by Newark receiving but not paying for sewerage service.
Plaintiff, though seemingly recognizing the legitimacy of Newark's expenses and its revenue needs, objected to its billing scheme. Plaintiff conceived that Newark was penalizing high-volume users by compelling them to bear a disproportionate share of the costs incident to providing sewerage service. Consequently on May 29, 1981 it filed a complaint alleging that the ordinance caused a taking of its property without just compensation and was unreasonable, inequitable, arbitrary and not uniform. Plaintiff asserted that the ordinance formula resulted in an overcharge to it for its benefits derived from the sewerage system. Plaintiff asked the court to invalidate the ordinance, grant injunctive relief against its enforcement and award damages from the alleged overcharge. Newark filed an answer denying the ordinance was invalid and it counterclaimed for unpaid sewerage charges.
At the ensuing trial plaintiff attempted to show the disproportionate and inequitable effect of the ordinance. It contended that the rates should have been based on the cost to Newark of supplying the sewerage services to the users. Plaintiff would limit such costs to direct costs of service to the users and exclude indirect expenses arising from the operation of the sewerage system but not attributable to a particular user.
As a principal witness plaintiff called William G. Stannard, an expert in municipal waste water service and utility design rates. Stannard testified that the cost of services principle is used in setting utility rates for gas, electricity, water and sewerage. He said that three steps are involved in determining an equitable rate: (1) a determination of the amount of revenues needed to support the system; (2) allocating the sources of its costs, *505 and (3) rate design, i.e., allocating costs to the users in relation to the burden which they impose on the system. Stannard concluded that there were three costs to Newark improperly allocated to the rate: the cost of treatment of water from infiltration and inflow, the burden of delinquent accounts and the expense to carry Newark's own use of the system. In Stannard's view these costs should have been regarded as system-wide problems to be shared equally by all users. Thus he reasoned that the ordinance established an invalid billing method violating the cost of services principle by compelling plaintiff to bear costs unrelated to its use of the system.
Thomas A. Banker, Newark's Assistant Business Manager, testified that the ordinance increasing the sewer rates was adopted because of Passaic Valley's proposed increase in charges for treating Newark's sewerage. Additionally Newark had determined to recover from the system's users more of its costs of operating the system. By increasing the rates it would lessen the subsidization of the sewer system by the property taxpayers. He stated that Newark had analyzed the costs of operating the system and the allocation of those costs and had settled on a formula based on a usage charge thus requiring large-scale water users to assume a greater responsibility than small-scale water users for the costs of operating the sewer system.
The trial judge concluded that the ordinance established arbitrary, unreasonable and discriminatory charges by forcing plaintiff and other high-volume users to pay a grossly disproportionate share of the costs of treating sewerage attributable to infiltration and inflow, the carrying of delinquent accounts and Newark's own use of the system. The judge determined that this violated the cost of services principle and thus the ordinance was unreasonable and invalid under New Jersey law. In the circumstances the judge did not determine whether the ordinance violated federal constitutional principles.
*506 On July 29, 1983 the judge entered an order in conformity with his decision. He made no determination of the amount of damages but at the request of Newark certified the judgment invalidating the ordinance as final pursuant to R. 4:42-2. The judgment does not mention the counterclaim. Newark has appealed from that judgment.
Initially we deal with a preliminary matter. Plaintiff argues that this case rather than turning on issues of law involves a review of an essentially factual determination that Newark's rates are unreasonable. Thus plaintiff asserts that the trial court's findings were based on adequate, substantial and credible evidence and as a result its judgment should be affirmed. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974).
We reject this contention. The trial judge of course made factual findings but his decision was in no sense dependent upon his assessment of conflicting testimony. Indeed the parties entered into a formal stipulation of facts germane to this action. Newark does not contend that its costs do not include charges for treatment of waters from inflow and infiltration, for delinquent accounts and for treatment of its own facilities. Thus Newark does not quarrel with the factual findings underlying the decision. Instead it asserts that the trial judge erred in determining the law. While we respect the views of the trial judge on the legal issues of this case, we conclude the principles of Rova Farms are not controlling.
Newark's authority to set sewerage rates is set forth in N.J.S.A. 40:63-7 which authorizes municipalities to establish sewerage rates which they deem proper and necessary. As long as the ordinance setting sewer user rates is not patently unreasonable, it will be valid. Piscataway Apt. Assoc. v. Tp. Piscataway, 66 N.J. 106, 109 (1974); see H.P. Higgs Co. v. Madison, 188 N.J. Super. 212, 222 (App.Div. 1983), certif. den. 94 *507 N.J. 535 (1983). It has been determined that an ordinance setting sewer rates is not patently unreasonable provided that those serviced and benefited by a sewer system finance the system in fair proportion to the cost of providing service to them. See Airwick Industries, Inc. v. Carlstadt Sewerage Auth., 57 N.J. 107, 122 (1970), app. dism. and cert. den. 402 U.S. 967, 91 S.Ct. 1666, 29 L.Ed.2d 132 (1971). Thus in deciding this appeal we accept Stannard's testimony that a reasonable rate must comply with the cost of services principle so that the rates in general should recover from a user the cost to the supplier of providing the service to that user.[1]
But we cannot accept the trial court's application of the cost of services principle leading it to conclude that Newark's ordinance is arbitrary, unreasonable and discriminatory because it does not allocate costs to each user in proportion to the cost that the user imposes on the sewer system. This application rigidly focuses on the direct costs which the user imposes on the system and ignores the indirect costs which must be financed by either the users of the system or recovered from some other source. It seems beyond any question that it may be rationally concluded that a large-scale user benefits far more than a small user from the payment of these indirect costs so that the sewer service may be provided. Indeed it is completely reasonable to conclude that the benefit conferred on the user is directly proportionate to his use of the system, the precise basis of Newark's billings under its ordinance. Thus Newark may reasonably conclude that the cost of service includes the indirect costs of the sewerage system.
A contrary finding would result in the quite shocking consequence that to the extent the charges generated by the system *508 pay its expenses the small users, in many cases homeowners, must carry the large-scale users of the system. This court is not unaware of the economic realities in Newark and thus we do not doubt that in many circumstances if we uphold the trial court we would compel persons of modest means to subsidize business operations. We refuse to make any such ruling. At the very least we cannot say as a matter of law that Newark acted unreasonably in determining to bill users in direct proportion to the use of their system. Accordingly inasmuch as the Newark billing system is not patently unreasonable, under New Jersey law it cannot be invalidated.
Our acceptance of the Newark rates under New Jersey law compels us to consider plaintiff's constitutional objections to the ordinance. Initially we reject Newark's contention that plaintiff's failure to cross-appeal precludes it from now raising constitutional arguments. A cross-appeal may be taken from a judgment partially adverse to the cross-appellant. See Franklin Discount Co. v. Ford, 27 N.J. 473, 491 (1958). Here the judgment was completely in plaintiff's favor. The trial judge did not reject plaintiff's constitutional arguments. Rather he did not reach them. We will do so.
Plaintiff's constitutional contentions that the ordinance denies due process of law, takes its property without just compensation and denies it equal protection of the law are meritless. An ordinance if arbitrary, unreasonable or capricious will deny due process of law. Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940, 950 (1934). Consequently as our Supreme Court recently held to satisfy due process: "The legislation must bear a rational relationship to a constitutionally permissible objective." U.S.A. Chamber of Commerce v. State, 89 N.J. 131, 155 (1982). As already set forth the Newark ordinance is fair and rational for it quite reasonably allocates costs of the sewerage system on the basis *509 of usage. While we do not go so far as to suggest that an ordinance predicated on plaintiff's method of applying the cost of services principle would be invalid, it would not be preferable to the method followed by Newark. At the very least we can say that due process does not require the shift of costs so that all users regardless of the intensity of their use must share them equally.
Plaintiff's contention that Newark's ordinance forces it to pay a disproportionate share of the costs of operating the sewer system and thus constitutes a taking of property without compensation in violation of the Fourteenth Amendment of the United States Constitution is not substantial. Of course private property may not be taken for public use by a municipal ordinance without just compensation being paid. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358, 364 (1980); Penn Central Transp. Co. v. New York City, 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631, 647 (1978). But here there is no such taking. The indirect costs of which plaintiff complains are a cost of the system and their satisfaction may reasonably be deemed to benefit the users in proportion to their use.
Finally we hold the Newark ordinance does not deny plaintiffs equal protection of the law. While an ordinance may not draw arbitrary or capricious classifications, U.S.A. Chamber of Commerce v. State, supra, 89 N.J. at 159, the establishment of charges on the basis of a direct percentage use of the system cannot conceivably be thought to establish unreasonable classifications.
The order of July 29, 1983 is reversed and the complaint is dismissed. The matter is remanded to the Superior Court, Law Division, Essex County, for disposition of the counterclaim. We do not retain jurisdiction.
NOTES
[1] We do not decide that any other principle cannot be adopted. In view of our result we need not reach the issue.