**J & A REALTY, a New Jersey Partnership, Plaintiff,**

v.

**CITY OF ASBURY PARK, et al., Defendants.**

**Civ. A. No. 89–4355 (JCL).**

United States District Court, D. New Jersey.

April 18, 1991.

Jeffrey Kantowitz, Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Woodbridge, N.J., for plaintiff.

Robin S. Perry, Steinberg & Fellenz, Asbury Park, N.J., for defendants.

## OPINION

LIFLAND, District Judge.

Plaintiff, J & A Realty ("J & A"), moves to strike defenses. Defendants oppose the motion.

## BACKGROUND

In 1988, the City of Asbury Park ("the city") enacted an ordinance which established the city sewer system as a self-liquidating municipal utility. To fund its new sewer plant, the city passed a sewer ordinance which established a system for assessing property owners for sewer charges. Prior to that time, the city provided its property owners with sewer service which was billed as a part of the owner's municipal property taxes. The new charges are based upon two factors: 1) an annual flat charge based upon the size of the user's water meter; and 2) a gallonage rate based upon the number of gallons of water consumed by the property.

J & A owns property in Asbury Park, which it leases to a corporation operating a commercial laundry on the site. J & A failed to pay the sewer charges for the years 1988 through 1990. Pursuant to the ordinance, the delinquent payments became a lien on the property. Due to J & A's failure to pay its 1988 and 1989 sewer charges, the city imposed a lien upon the property and sold the lien in a tax sale. J & A filed an unsuccessful administrative appeal with the Sewer Utility Appeals

Board. In October of 1989, J & A filed a complaint in this court, challenging the constitutionality of the ordinance. J & A alleges that the ordinance fails to account for the strength and volume of the user's wastewater, and that the charges bear "no reasonable relation" to the amount of service provided. *See* Complaint, Count 1. In Count 2, J & A alleges that the ordinance denies equal protection of the laws in violation of the federal and New Jersey Constitutions by distinguishing between water meter sizes as a means to assess sewer charges. In Count 3, J & A alleges that the sewer rentals, the lien and the resultant tax sale constitute a taking of private property for public use without just compensation in violation of the 5th amendment and ¶ 20 of Article 1 of the New Jersey Constitution. In Count 4, J & A alleges that defendants' actions taken under color of state law and or pursuant to governmental policy deprived J & A of its rights to substantive and procedural due process, equal protection and just compensation contrary to 42 U.S.C. § 1983. J & A sues the following (hereinafter referred to as "defendants"): the city of Asbury Park; William Black, the city's "Director of the Sewer Tariff"; Helen Pride, the city's tax collector; Garrett Giberson, the city's Deputy Director of Public Maintenance; and Katherine Knox, the city's Sewer Utility Collection Clerk. J & A seeks: to have the ordinance declared null and void; a permanent injunction against the enforcement of the ordinance; rescission of all sewer bills; monitoring of the discharge from J & A's premises; a declaration that all liens on its property are null and void; a permanent injunction against the collection of sewer charges; and damages, interest and costs.

J & A moves to strike the following defenses:

1st Defense—that J & A fails to state a cause of action upon which relief can be granted;

2nd Defense—that the court lacks jurisdiction to hear the case due to the Johnson Act;

3rd Defense—that defendants are entitled to immunity pursuant to the New Jersey Tort Claims Act;

5th Defense—that defendants did not proximately cause any deprivation of plaintiff's rights;

6th Defense—that any damages were a result of plaintiff's own unlawful actions;

7th Defense—that defendants lack willfulness;

8th Defense—that defendants acted reasonably and without malice; and

9th Defense—that defendants' negligence was not the proximate cause of plaintiff's damages.

## DISCUSSION

■ Federal Rule of Civil Procedure 12(f) permits a court, upon motion by a party, to strike an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter". Rule 12(f) motions are disfavored, especially in the absence of prejudice. *Abrams v. Lightolier, Inc.*, 702 F.Supp. 509, 511 (D.N.J.1988) (citations omitted). A motion to strike is not granted unless the insufficiency of a defense is "clearly apparent". *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).

### First Defense

■ Defendants assert that J & A fails to state a cause of action upon which relief can be granted. J & A argues that it has stated a cause of action under 42 U.S.C. § 1983 by alleging that defendants' conduct under color of state law violated plaintiff's constitutional rights. Defendants reply that the court should sustain any possible defenses.

J & A alleges that the ordinance violates numerous provisions of the federal and state constitutions, as well as § 1983. Plaintiff has a heavy burden on this issue, and the insufficiency of this defense is not "clearly apparent". Therefore, the court will not strike defendants' first defense.

### Second Defense

■ Defendants assert that the court lacks jurisdiction pursuant to the Johnson Act, 28 U.S.C. § 1342, which provides:

The district courts shall not enjoin, suspend or restrain the operation of, or com-

pliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

Where all four requirements of the Johnson Act are satisfied a court may not exercise jurisdiction over a claim for injunctive relief against a municipal rate-making body. *Zucker v. Bell Telephone Co.*, 373 F.Supp. 748, 755 (E.D.Pa.1974), *aff'd without opinion*, 510 F.2d 971 (3d Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); *Louisiana Power & Light Co. v. Ackel*, 616 F.Supp. 445 (M.D. La.1985); *Kalinsky v. Long Island Lighting Co.*, 484 F.Supp. 176 (E.D.N.Y.1980). "The Johnson Act expresses Congress' intent that, absent special circumstances, state utility rates are a matter for state regulation." *South Central Bell Telephone Co. v. Public Service Comm'n*, 420 F.Supp. 376, 378 (E.D.Ky.1976). Those four requirements will now be considered.

■ *Jurisdiction.* J & A bases this court's jurisdiction upon defendants' violations of J & A's constitutional rights, under both the federal and state constitutions, and 42 U.S.C. §§ 1981, 1983. *See* complaint at ¶ 7. J & A argues that its allegation that defendants have violated 42 U.S.C. § 1983 constitutes a "statutory" claim based on federal law which precludes the application of the Johnson Act, since jurisdiction is not based "solely" upon the ordinance's repugnance to the Federal Constitution. The court disagrees. A plaintiff may not use § 1983 as an "end run around the Johnson Act". *Peoples Nat'l Utility Co. v. Houston*, 837 F.2d 1366, 1368 (5th Cir.1988); *Louisiana Power & Light*, 616 F.Supp. at 447; *Kalinsky*, 484 F.Supp. 176; *South Central Bell Telephone Co.*, 420

F.Supp. 376; *Zucker*, 373 F.Supp. 748; *Tennyson v. Gas Service Co.*, 367 F.Supp. 102, 104 (D.Kan.1973), *aff'd*, 506 F.2d 1135 (10th Cir.1974).

■ J & A argues that it does not challenge the rates charged by the city. Instead, it argues that it challenges the "components and application of the rate ... and the City's failure to distinguish between the types of users, as explicitly provided by ordinance, when *applying* the rate". *See* Plaintiff's reply brief at 4. Moreover, J & A asserts that no entanglement into state regulated utilities will result from its challenge to the ordinance, since it seeks relief "directly from the municipality for a determination and function—establishment of a rate structure as distinct from mere adjustment of rates ...". *Id.* The court fails to see the import of this attempted distinction. The Johnson Act clearly precludes a federal court from exercising jurisdiction over challenges to rate-setting ordinances where injunctive relief is sought. *See Non–Resident Taxpayers Ass'n v. Philadelphia*, 478 F.2d 456 (3d Cir.1973).

Therefore, the first requirement for applicability of the Johnson Act is satisfied, since J & A bases federal jurisdiction solely upon the ordinance's alleged repugnance to the Federal Constitution.

*Interstate Commerce.* The court concludes, and J & A does not argue to the contrary, that the city's sewer ordinance does not interfere with interstate commerce.

*Notice and Hearing.* The Johnson Act requires that the ordinance be passed after reasonable notice and a hearing. Since defendants assert that the ordinance was passed after reasonable notice and a hearing, and J & A does not argue to the contrary, the court concludes for the purposes of this motion that this requirement is met.

*State Court Remedy.* The city argues that J & A could have brought its claim for injunctive relief in state court, particularly under the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.* State courts are capable of interpreting a plaintiff's consti-

tutional claims, which gives rise to doctrines by which federal courts abstain from exercising jurisdiction in the interests of comity. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (abstention where claims can be presented to a state administrative agency). J & A had a speedy and efficient remedy in state court, but chose to pursue its claims in federal court.

■ The court finds that all four requirements of the Johnson Act are satisfied and the court therefore lacks jurisdiction over J & A's claim for injunctive relief. Moreover, the court notes that, apart from the Johnson Act, federal courts may abstain from local rate-setting issues in the interest of comity. *Zucker,* 373 F.Supp. at 756. Therefore, the court will deny J & A's motion to strike defendants' second defense.

*Third Defense*

Defendants assert that they are entitled to immunity from liability pursuant to N.J.S.A. 59:2-1 *et seq.* and 59:3-1 *et seq.,* since J & A's state constitutional claims are within the New Jersey Tort Claims Act. In response, J & A argues that under N.J.S.A. 59:1-4 it has "the right to obtain relief other than damages", and that state immunity does not apply, since J & A seeks damages for the violation of its constitutional rights only under § 1983. However, J & A requests *inter alia,* damages, interest and costs as to the first three Counts of the complaint, which allege violations of J & A's constitutional rights under the federal and state constitutions. *See* ¶¶ 23(h), 26(h) and 30(h). Only Count four of the complaint alleges a violation of J & A's rights under 42 U.S.C. § 1983.

■ State statutory immunity does not immunize individuals from liability in a suit under 42 U.S.C. § 1983. *Wade v. Pittsburgh,* 765 F.2d 405, 407–08 (3d Cir. 1985). "The Supremacy Clause of the Constitution prevents a state from immunizing entities or individuals alleged to have vio-

lated federal law." *Id.* However, the *Wade* court noted that state statutory immunity is effective against a state tort claim. *Id.* J & A brings pendent claims that defendants violated its state constitutional rights. While a claim that a public entity is liable for violating a plaintiff's constitutional rights constitutes an "injury" under the New Jersey Tort Claims Act, *Lloyd v. Stone Harbor,* 179 N.J.Super. 496, 511–12, 432 A.2d 572 (App.Div.1981), the Act bars recovery against a public entity (although not against a public employee). *Id.* at 511, 432 A.2d 572. The *Lloyd* court addressed the issue of whether a municipality may be entitled to state statutory immunity for claims of constitutional deprivations under the New Jersey Constitution. The court noted "[i]t would be anomalous to grant immunity to New Jersey municipalities sued under our Constitution while they remain liable when sued under federal law, particularly when our courts have concurrent jurisdiction over the latter actions." 179 N.J.Super at 517, 432 A.2d 572. Thus, neither the city nor the public employees sued in this action can claim immunity under the New Jersey Torts Claims Act, and the court will grant J & A's motion to strike the third defense.

*Fifth, Sixth and Ninth Defenses*

■ In their fifth defense defendants assert that their actions were not the direct and proximate cause of any deprivation of J & A's rights. Defendants' sixth defense asserts that any damages J & A sustained were the result of its own unlawful actions. J & A argues that it has stated a claim under § 1983 and that the aforementioned defenses are immaterial to that claim. J & A states that the defendants have admitted that they imposed the sewer charges on J & A pursuant to the sewer ordinance and, notwithstanding their "authority" to adjust the sewer charges, no adjustment was made. Thus, J & A argues that there can be no evidence of intervening events, and no dispute that defendants' conduct and inaction led directly to the violation of J & A's rights. Finally, J & A notes that defendants' ninth defense invokes the Tort

Claims Act, which does not apply to J & A's suit under § 1983. Defendants do not respond to J & A's arguments with regard to these defenses.

Since defendants have admitted that they passed and enforced the ordinance (*see* Answer at ¶¶ 11–20), the fifth and sixth defenses concerning proximate causation are inapplicable and the court will grant J & A's motion to strike these defenses. (The court notes that defendants have not admitted that they possessed the authority to adjust the sewer charges at J & A's request.)

Defendants' ninth defense states that defendants' negligence, if any, was not the proximate cause of J & A's injury. Since J & A does not allege negligence, the court will grant its motion to strike the ninth defense.

*Seventh and Eighth Defenses*

■ In their seventh defense, defendants assert that their conduct involved no willfulness. The eighth defense states that defendants acted upon reasonable grounds and without malice. Defendants state that these defenses are proper, since malice and willfulness are elements of J & A's equal protection claim, citing *Ortega Cabrera v. Bayamon*, 562 F.2d 91 (1st Cir.1977); *Chavez v. Tempe Union High School Dist.*, 565 F.2d 1087 (9th Cir.1977). J & A argues that these defenses are irrelevant to an action under § 1983, citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Owen v. Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (municipality is not entitled to immunity from liability under § 1983 for acts by its agents which implement an unconstitutional policy or custom). While *Owen* does not alter the qualified immunity available to governmental employees sued in their individual capacities, 445 U.S. at 638 n. 18, 100 S.Ct. at 1409 n. 18, J & A sues the individual defendants only in their official capacities. So long as a governmental entity has notice of the action, a suit against officials in their official capacity is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Under *Owen*, the municipality is not entitled to assert the good faith of its officers as a defense under § 1983, and since J & A does not sue the individual defendants in their individual capacities, their good faith is not implicated by this suit.

■ Absent a suspect class or a fundamental right, an ordinance violates equal protection under the fourteenth amendment if the statutory classification is not rationally related to a legitimate state interest. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Deibler v. Rehoboth Beach*, 790 F.2d 328, 333 (3d Cir.1986) (challenge on equal protection grounds under § 1983 to an ordinance requiring candidates for local office to be nondelinquent taxpayers). Therefore, the municipality's malice and willfulness are also not implicated by J & A's claim that the ordinance violates its equal protection rights by treating users of Asbury Park's sewer system differently, and the court will grant J & A's motion to strike the seventh and eighth defenses.

CONCLUSION

There is a likelihood that J & A's claim that the ordinance is unconstitutional is without merit. In *Piscataway Apartment Assoc. v. Piscataway*, 66 N.J. 106, 328 A.2d 608 (1974), the New Jersey Supreme Court held that an ordinance is valid unless it is patently unreasonable. 328 A.2d at 609. The court upheld general distinctions between ratepayers against the plaintiff's challenge that the sewer charges should be based upon specific sewerage flows of individual property owners. Likewise, in *Seton Co. v. Newark*, 194 N.J.Super. 499, 477 A.2d 397 (App.Div.), *certif. denied*, 99 N.J. 152, 491 A.2d 667 (1984), the court upheld Newark's sewer ordinance which fixed user charges in direct proportion to the use of the system. *Id.* at 507, 477 A.2d 397. As in this case, the plaintiffs in *Seton Co.* argued that the ordinance failed to include a differential in charges based upon the quality or quantity of sewage production. The court found that the ordinance was not

arbitrary or unreasonable even though it did not allocate costs to individual users in proportion to the costs that user imposed upon the system. *Id.* Nor did the ordinance deny due process or equal protection or constitute a taking of property without just compensation. *Id.* at 509, 477 A.2d 397. It is not likely that federal constitutional analysis will differ from the state constitutional analysis set forth in *Piscataway* and *Seton, supra.*

Immediately after the final pretrial conference, the court will entertain a summary judgment motion to consider whether (assuming no material factual disputes) this case may be decided under federal law in accordance with the constitutional analysis set forth in *Piscataway* and *Seton.*