92 F.3d 1192
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
KEAUHOU MASTER HOMEOWNERS ASSOCIATION, INC., a Hawaii
non-profit corporation; William S. Taylor, an individual,
and as a representative of a class of taxpayers residing in
Keauhou, Hawaii, Plaintiffs-Appellants,
v.
COUNTY OF HAWAII, a municipal corporation; Stephen
Yamashiro, in his capacity as Mayor; Riley W. Smith;
Harold Sugiyama; Kamehameha Schools/Bishop Estate, Lokelani
Lindsey; Henry R. Peters; Oswald K. Stender; Myron
Thompson; Richard Wong; Kamehameha Investment Corporation,
a Hawaii corporation; Keauhou Community Services, Inc., a
Hawaii corporation, Defendants-Appellees.
 No. 94-17075.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1996.
Decided July 31, 1996.
 
 Before: FLETCHER, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiffs, Keauhou Master Homeowners Association and an individual homeowner residing in Keauhou, Hawaii, appeal from the district court's order and judgment dismissing their action for lack of subject matter jurisdiction. Plaintiffs contend that the County of Hawaii's "transfer" of sewage facilities and services to a private corporation, Keauhou Community Services, Inc. ("KCS"), constitutes a violation of procedural and substantive due process and an unlawful taking under the Fifth and Fourteenth Amendments. Plaintiffs allege in addition violations of state law. The district court dismissed on the basis of the Johnson Act, 28 U.S.C. § 1342, which precludes federal court jurisdiction over suits affecting utility rate orders. We agree with the district court that, at bottom, plaintiffs' complaint challenges the Public Utility Commission's ("the Commission's") orders authorizing KCS to provide sewage services at specified rates. Plaintiffs' other contentions are either intertwined with issues relating to the Commission's rate orders or are not cognizable in federal court. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.
 
 FACTS
 
 3
 From 1971 to 1994, the County of Hawaii was the provider of sewage services to residents of Keauhou. It owned and operated a sewage treatment plant ("the Heeia plant") and collection system equipment and obtained easements from Keauhou property owners through which to run the sewage pipes. Because the rates charged by the County were not sufficient to cover the cost of operating and maintaining the Heeia plant, the facility deteriorated to an unacceptable condition. The County negotiated with Kamehameha Investment Corporation ("KIC") to fund a new plant. In 1986 or 1987, it asked KIC to build the new plant and later asked KIC to assume the operation of the new plant. In 1991, KIC formed KCS to take responsibility for building and maintaining the plant.
 
 
 4
 On April 16, 1992, KCS filed an application with the Commission, requesting certification for sewage collection and treatment services to the Keauhou area and approval of proposed rates, rules, and regulations.[1] The Commission published a notice of public hearing regarding KCS's application. KCS mailed to all customers in its proposed service area notice of its application and information about the public meeting.
 
 
 5
 On June 25, 1993, the Commission issued an interim decision granting KCS's request for a certificate of authorization and accepting KCS's test year revenue requirement on an interim basis. On November 8, 1993, the Commission published a final decision giving approval to KCS's revenue requirement, approving KCS's rates, rules and regulations, and authorizing KCS to commence operations. The Commission explained,
 
 
 6
 In summary, KCS will own and operate a sewage treatment plant to service the Keauhou area as a result of an agreement by its parent company [KIC] with the County of Hawaii. Under that agreement, KIC agreed to construct a new sewage treatment plant to replace the deteriorated, county-owned and operated Heeia plant. KIC also agreed to operate and maintain the new plant.[2]
 
 
 7
 In setting the rate schedule, the Commission recognized that KCS's rates "represent a substantial increase over the rates formerly charged by the County of Hawaii when the Keauhou area was being serviced by the county system." The Commission concluded, however, that KCS should not be faulted for the County's fiscal mismanagement. It found that the County's artificially low rates led directly to inadequate maintenance and deterioration of the County facility. It concluded that KCS's proposed rates were reasonable and comparable to those charged by other private sewage companies in the state. Despite approving KCS's rates and authority to operate, the Commission criticized the County for failing to inform ratepayers sooner of its intent to privatize the sewage system.
 
 
 8
 On or about February 3, 1994, the County disconnected the Heeia plant from its network of sewage pipes and connected KCS's new plant to the pipes. Since that time, KCS, rather than the County, has been supplying sewage treatment services to the residents of Keauhou.
 
 STANDARD OF REVIEW
 
 9
 The district court's dismissal for lack of subject matter jurisdiction is reviewed de novo. Seven Resorts, Inc. v. Cantlen, 57 F.3d 771, 772 (9th Cir.1995). Pursuant to deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court may receive evidence to resolve underlying factual disputes. Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir.1983). The consideration of such evidence does not convert the motion into one for summary judgment. Id. Any factual determinations made by the district court in ruling on the motion to dismiss are reviewed for clear error. Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994).
 
 DISCUSSION
 
 10
 The Johnson Act "precludes federal court jurisdiction over all suits affecting state-approved utility rates, including actions seeking declaratory relief and compensatory damages." Brooks v. Sulphur Springs Valley Elec. Cooperative, 951 F.2d 1050, 1054 (9th Cir.1991), cert. denied, 503 U.S. 938 (1992). It provides:
 
 
 11
 The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
 
 
 12
 (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
 
 
 13
 (2) The order does not interfere with interstate commerce; and,
 
 
 14
 (3) The order has been made after reasonable notice and hearing; and,
 
 
 15
 (4) A plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 16
 28 U.S.C. § 1342.
 
 
 17
 Plaintiffs do not dispute that (1) jurisdiction is based solely on repugnance of the order to the Federal Constitution; (2) the orders by the Commission do not interfere with interstate commerce; (3) the orders were made after reasonable notice and hearing; and (4) there is a plain, speedy and efficient remedy in the state courts for appealing the Commission's orders. 28 U.S.C. § 1342. Moreover, it is clear that the Commission's orders authorizing KCS to provide sewage services at specified rates constitute "order[s] affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body." Id.; see, e.g., Brooks, 951 F.2d at 1055 (holding Johnson Act applicable to action challenging monthly service availability charge which had been approved by state commission). Whether the Johnson Act bars plaintiffs' suit turns, then, on whether plaintiffs' complaint in fact challenges the Commission's rate orders, or whether plaintiffs can state a federal claim, and be entitled to relief, without impinging on the Commission's orders and rate-setting authority.
 
 
 18
 The district court concluded that "plaintiffs['] own submissions belie their claims" not to be challenging the Commission's rate orders. The court noted that plaintiffs' amended complaint alleges that "KCS's rates are 66 2/3% above the existing County of Hawaii rate for services." The complaint seeks damages in the amount of the difference between the past and present sewage rates. Additionally, plaintiffs requested leave to make their sewage treatment payments to the court, rather than to KCS, because "[s]ewage service charges billed to the Plaintiffs by KCS constitute a sixty six percent increase from what Plaintiffs paid to the County of Hawaii when the County provided Plaintiffs with sewage service." Plaintiffs assert that the sewage payments "are, in part, the subject matter of this Act."
 
 
 19
 We agree that plaintiffs' submissions demonstrate an intent to challenge their sewage service rates. Plaintiffs do not contend that KCS's ownership and management of the sewer system is unfavorable in any way other than having occasioned an increase in rates. The action directly challenges the propriety of KCS's new rates. Undoubtedly, this suit would not have been brought had KCS's rates remained the same, or lower, than the County's.
 
 
 20
 Plaintiffs are unable to state a cognizable federal claim that is not impermissibly intertwined with the Commission's rate orders. Plaintiffs appear to contend that the County gave away or sold the County sewage system to a private entity without just compensation. However, the giving away or sale of public property, while it may violate Hawaii's state constitution, laws, and local ordinances, does not constitute a taking by the government of plaintiffs' property. Thus, this allegation does not present a colorable "takings" claim sufficient to support federal subject matter jurisdiction. To the extent plaintiffs have a property interest in their entitlement to continued sewage service that cannot be taken by the County without just compensation, cf. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978), this interest was not lost. Plaintiffs retained sewage service--simply by a different provider. The only material difference is the increase in rates. Even if we assume arguendo that an unreasonable increase in rates could be deemed a "taking," such a claim is clearly a challenge to "an order affecting rates" prohibited by the Johnson Act.[3]
 
 
 21
 To the extent plaintiffs could state a due process claim on the basis of the County's "transferring" the sewage system without obtaining the requisite approval under county and state law, such a claim would also be impermissibly intertwined with the Commission's rate orders. Any conclusion by the district court as to the constitutionality of the County's actions in "transferring" the sewage system to KCS would have the potential to undercut the factual determinations, legal conclusions and policy pronouncements of the Commission's rate orders. Although the Commission did not directly authorize the County's cessation of sewage service, it made findings with respect to the County's actions (e.g., that the County's sewage facility was inadequate and that the County had been charging artificially low rates) which formed the basis of its decision to authorize higher rates by KCS. Were the district court to find a violation of due process, making plaintiffs whole would not necessarily mean compensating plaintiffs for the entire increase in their rates. Rather, plaintiffs would only be injured, and the County liable for damages, to the extent KCS's rates were higher than they should have been. Determining this question would clearly impinge on the Commission's orders and rate-setting authority.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In order for a private entity to own and operate a sewage disposal system, it must apply to the Commission for authorization as a public utility and must obtain a certificate of public convenience and necessity from the Commission. Haw.Rev.Stat. § 269-7.5. The Commission must approve the rates charged, and any subsequent change in rates, after notice to the public and a hearing. Id. § 269-16
 By contrast, the Commission does not have authority over the County-run sewage system. See Haw.Rev.Stat. § 269-6 (the Commission has "general supervision ... over all public utilities"); id. § 269-1(1) (a "public utility" "[i]ncludes any person, insofar as that person owns or operates a private sewer company or sewer facility") (emphasis added). Counties have authority over their own sewage facilities. See Haw.Rev.Stat. § 46-1.5(23); Haw.Cty.Code § 21-1. To the extent the district court found that the County's sewage system was a public utility and that the Commission had direct authority over the County's sewage system, the court erred. Any such error was harmless, however. Although the Commission did not directly authorize the "transfer" of the County's sewage system to KCS, its rate orders were dependent on its findings with respect to the County's privatization of sewage services.
 
 
 [2]
 Plaintiffs challenge the district court's finding that KIC and the County had an agreement. This was expressly found by the Commission; to the extent plaintiffs challenge this finding, they are impermissibly challenging the factual basis on which the Commission's "order affecting rates" relies. See 28 U.S.C. § 1342
 
 
 [3]
 We note that the Johnson Act only restricts federal district courts' exercise of jurisdiction over claims related to rate orders. Thus, the Johnson Act would pose no bar to a suit brought in state court alleging that the County's "transfer" of sewage facilities violated the Fifth and Fourteenth Amendments of the United States Constitution