**Sidney BROOKS, Plaintiff–Appellant,**

v.

**SULPHUR SPRINGS VALLEY ELECTRIC COOPERATIVE, Arizona Corporation Commission, Defendants–Appellees.**

**No. 90–16113.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Decided Dec. 11, 1991.

---

Sidney Brooks, pro se.

Catherine M. Stewart, Desens & Hitchcock, Bisbee, Ariz., for defendant-appellee Sulphur Springs Valley Elec. Co-op.

Janice M. Alward, Arizona Corp. Com'n, Phoenix, Ariz., for defendant-appellee Arizona Corp. Com'n.

Before PREGERSON, FERGUSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

This appeal marks the latest battle in Sidney Brooks' long-running campaign against a $6.50 monthly service availability charge imposed on him by Sulphur Springs Valley Electric Cooperative ("SSVEC") with the approval of the Arizona Corporation Commission ("the Commission"). Brooks appeals pro se from a district court order granting summary judgment in favor of SSVEC and the Commission.

I

On November 18, 1976, Brooks signed a contract with SSVEC for the extension of electric service to his home. Pursuant to the contract, SSVEC built an extension line to Brooks' home, charging Brooks a portion of the construction cost. The contract also called for a monthly service availability charge of $6.50 per month, subject to future adjustment if additional customers connected to the extension line. The service availability charge was calculated according to SSVEC's Tariff 4.17(b), which was authorized by the Commission on November 1, 1976, and reauthorized on June 21, 1982.

Brooks fired the first salvo of his campaign in 1984, when he challenged Tariff 4.17(b) in a complaint filed with the Commission. The Commission dismissed the complaint on the grounds that, under Arizona law, individual customers may not challenge the reasonableness of utility rates. *Brooks v. Sulphur Springs Valley Elec. Coop.*, Ariz. Corp. Comm'n Decision No. 54862 (1986). Undeterred, Brooks convinced twenty-four other SSVEC customers to join his complaint, and filed again. The Commission dismissed this second complaint on the merits. *Brooks v. Sulphur Springs Valley Elec. Coop.*, Ariz. Corp. Comm'n Decision No. 55398 (1987).

In 1988, when SSVEC filed an application for a rate increase, the Commission allowed Brooks to intervene. Following hearings, the Commission granted the rate increase, but ordered SSVEC to amend Tariff 4.17(b) to reduce the service availability charge. Application of Sulphur Springs Valley Elec. Coop., Ariz. Corp. Comm'n Decision No. 56100 (1988). SSVEC, with the concurrence of the Commission, applied this change only to extensions added after the decision. Four months after Decision 56100 was rendered, Brooks filed an action in Arizona Justice Court against SSVEC, contending that Decision 56100 required SSVEC to reduce his service availability charge. The Justice Court dismissed for lack of subject matter jurisdiction.

Finally, on December 26, 1989, Brooks filed the present action in federal court. In his complaint, Brooks alleged that Tariff 4.17(b) violates the Equal Protection Clause of the Fourteenth Amendment. Brooks requested that the court order SSVEC to cease charging its customers under Tariff 4.17(b) and to refund all monies collected under the Tariff. The district court granted appellees' motion for summary judgment, ruling that it lacked jurisdiction under the Eleventh Amendment and the Johnson Act. Brooks, who has represented

himself throughout these proceedings, timely appealed.

## II

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 508 (9th Cir.1990). Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states. *Austin v. State Indus. Ins. Sys.,* 939 F.2d 676, 677 (9th Cir.1991); *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature.[1] *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907.

The test employed in this circuit for determining if a state agency is immune from suit under the Eleventh Amendment was announced in *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989). The Commission clearly meets this test. A money judgment against the Commission would be satisfied out of state funds. *See* Ariz.Rev.Stat.Ann. §§ 40–108, 40–109. The Commission performs central governmental functions, *see* Ariz. const. art. XV, and is authorized to undertake enforcement actions in the name of the state, *see* Ariz.Rev. Stat.Ann. § 40–422 (1985). The Commission does not have independent corporate status or the power to take property in its own name. As an integral state agency, the Commission is shielded from suit by the Eleventh Amendment. We therefore affirm the grant of summary judgment in favor of the Commission.

SSVEC, however, is not entitled to Eleventh Amendment immunity. SSVEC is not a state agency; rather, it is an independent, non-profit public service corporation subject to regulation by the Commission. None of the *Mitchell* factors weighs in favor of granting SSVEC immunity. A damage award against SSVEC would not be paid from the state treasury. SSVEC performs no essential governmental function, has independent corporate status, may sue and be sued in its own name, and may take and hold property in its own name. *See* Ariz.Rev.Stat.Ann. § 10–757 (1990). The Eleventh Amendment does not bar the claim against SSVEC.

## III

### A

The district court also held that it lacked jurisdiction under the Johnson Act, which provides:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342 (1988).

The Ninth Circuit has never directly confronted the question of the Johnson Act's applicability to actions for declaratory relief or compensatory damages. Several

---

1. In some circumstances, suits may be brought against individual state officers. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Brooks has not, however, named any individual defendants.

other circuits have broadly construed the Act's jurisdictional bar "to oust federal courts of jurisdiction over all challenges affecting rates." *Miller v. New York State Pub. Serv. Comm'n*, 807 F.2d 28, 31 (2d Cir.1986). *See also Hanna Mining Co. v. Minnesota Power & Light Co.*, 739 F.2d 1368, 1370 (8th Cir.1984); *Tennyson v. Gas Serv. Co.*, 506 F.2d 1135, 1139 (10th Cir. 1974). No circuit court of appeals has held the Act inapplicable to actions affecting state-approved rates when the relief sought is declaratory or compensatory, rather than injunctive.

The legislative history of the Act supports a broad interpretation. *See Miller*, 807 F.2d at 32–33. Although the primary evil the Act sought to remedy was the issuance of injunctions by federal courts against enforcement of state rate orders, legislators were also more generally concerned with protecting the authority of states "to perform their proper functions in the supervision and fixing of rates, without interference of Federal law." 78 Cong. Rec. 8324 (1934) (statement of Rep. Mapes). *See also id.* at 8331 (statement of Rep. Hughes) ("It is vitally important ... that a State in its governmental proceedings, in these controls, be free from interference from the Federal Government upon the grounds of violation of the provisions of the Federal Constitution until the final action of the State, through its highest judicial tribunal, demonstrates an appeal to Federal power for the protection of a constitutional right is necessary."). Legislators on both sides of the debate spoke of the Act as completely withdrawing rate cases from federal jurisdiction. *See id.* at 8328 (statement of Rep. Lewis); *id.* at 8340 (statement of Rep. Cochran).

Furthermore, allowing federal courts to hear actions for non-injunctive relief in state rate cases would "render the [Johnson Act] a nullity." *Miller*, 807 F.2d at 33. Disgruntled rate-payers could march into state court armed with a federal judgment granting declaratory relief or monetary damages and, using the doctrine of collateral estoppel, demand injunctive relief. Congress did not intend to withdraw from federal courts the power to enjoin state

rate orders directly but leave undisturbed the power to do so indirectly.

■ We therefore agree with the other circuits that have considered this issue. We hold that the Johnson Act precludes federal court jurisdiction over all suits affecting state-approved utility rates, including actions seeking declaratory relief and compensatory damages.

### B

All four conditions specified in the statute must be met for the Johnson Act to deprive federal courts of jurisdiction. *Hawaiian Tel. Co. v. Public Utils. Comm'n*, 827 F.2d 1264, 1273 (9th Cir.1987), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988). The first two conditions are clearly satisfied. Brooks challenges the Tariff solely on the grounds of repugnance to the Constitution. No one contends that the Tariff interferes with interstate commerce. Brooks argues that the third and fourth conditions of the Johnson Act are not satisfied because the challenged tariff was adopted without reasonable notice and hearing and the Arizona courts do not provide an adequate remedy.

■ Brooks first contends that Tariff 4.17(b) was adopted without adequate notice and hearing. Arizona law requires the Commission to hold a hearing before approving any rate change. Ariz.Rev.Stat. Ann. § 40–250 (1985). The utility seeking the change must provide thirty days notice to the Commission and the public. *Id.* § 40–367. Notice must also be provided to the public of all Commission meetings. *Id.* § 38–431.02. These provisions, if complied with, satisfy the Johnson Act's requirement of reasonable notice and hearing.

■ The Commission's finding that "[t]he disputed portion of SSVEC's Tariff was heretofore lawfully approved and authorized by the Commission," *Brooks v. Sulphur Springs Elec. Coop.*, Ariz. Corp. Comm'n Decision 55398 at 3 (1987), precludes relitigation of the issue of compliance with the requirements of notice and hearing under Arizona law. In the absence

of an indication of contrary congressional intent, federal courts should generally give adjudicative findings of fact of state administrative agencies the same preclusive effect they would have in the courts of the state, provided the parties had an adequate opportunity to litigate before the administrative body. *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* — U.S. —, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986). The Commission's decisions are given preclusive effect in Arizona courts unless the statutory procedure for obtaining judicial review is followed. *Arizona Pub. Serv. Co. v. Southern Union Gas Co.,* 76 Ariz. 373, 265 P.2d 435, 438 (1954). The Johnson Act contains no suggestion that state administrative decisions do not deserve preclusive effect. Quite the contrary, the Johnson Act was premised on the notion that disputes concerning local utility rates are most appropriately resolved by state administrative agencies. Therefore, we hold that Brooks is precluded by the Commission's finding from contesting compliance with statutorily-mandated procedures in the adoption of Tariff 4.17(b).

■ Brooks also contends that the Johnson Act does not apply because he lacks a plain, speedy and efficient remedy in state court. This contention is without merit. In order to qualify as "plain, speedy, and efficient," the state remedy need only meet certain minimum procedural requirements. *See Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 512–514, 101 S.Ct. 1221, 1228–1230, 67 L.Ed.2d 464 (1981) (construing the "plain, speedy, and efficient" state remedy requirement of the Tax Injunction Act, 28 U.S.C. § 1341, which was modeled after the identical language in the Johnson Act). To be "plain" the state remedy must not be uncertain or unclear. *Id.* at 517, 101 S.Ct. at 1231. To be "speedy" it must not entail significantly greater delay than a corresponding procedure in federal court. *See id.* at 519–21, 101 S.Ct. at 1232–1233. To be "efficient" it must not require "ineffectual activity or an unnecessary expenditure of time or energy." *Id.* at 518, 101 S.Ct. at 1231.

Arizona law provides ample opportunity for aggrieved persons to challenge utility rates and Commission decisions. Customers may complain to the Commission that the rates charged by a public service corporation violate "any provision of law or any order or rule of the commission." Ariz. Rev.Stat.Ann. § 40–246(A) (1985). A complaint challenging rates as excessive or discriminatory must be filed within two years of accrual of the cause of action. *Id.* § 40–248(B) (1985). A party dissatisfied with a Commission decision may apply for rehearing within twenty days of entry of the decision. *Id.* § 40–253(A). Within thirty days of rehearing or denial of rehearing, the aggrieved party may file an action for judicial review of the decision. *Id.* § 40–254(A). Actions properly brought before the state courts are given precedence over all other civil matters except election actions. *Id.* § 40–255. The Arizona courts, in such proceedings, can hear and resolve any claim that a Commission decision or order offends the federal constitution. *See, e.g., Pine–Strawberry Improvement Ass'n v. Arizona Corp. Comm'n,* 152 Ariz. 339, 732 P.2d 230 (Ariz.App.1986); *State ex rel. Corbin v. Arizona Corp. Comm'n,* 143 Ariz. 219, 693 P.2d 362 (Ariz.App.1984). A state remedy that provides the opportunity for a full hearing and judicial determination of all constitutional claims satisfies the requirements of the Johnson Act. *Cf. Rosewell,* 450 U.S. at 514, 101 S.Ct. at 1229.

Other courts have held similar schemes, requiring complaint in the first instance to the state commission and setting a short statute of limitations for seeking subsequent judicial review, adequate to satisfy the Johnson Act. *Tennyson,* 506 F.2d at 1141–42; *Mountain States Tel. & Tel. v. Public Util. Comm'n,* 345 F.Supp. 80, 83 (D.Colo.1972) (three-judge court). Arizona's scheme was held insufficient to preclude federal jurisdiction in *Mountain States Telephone & Telegraph v. Arizona Corporation Commission,* 331 F.Supp. 1167 (D.Ariz.1971) (three-judge court). Mountain States sought an injunction against enforcement of a Commission decision pending judicial resolution of the dis-

pute. Because Arizona law would not permit an interlocutory injunction, the court held the state court remedy inadequate. *Id.* at 1169; *see also Mountain States Power Co. v. Public Serv. Comm'n,* 299 U.S. 167, 169–70, 57 S.Ct. 168, 169, 81 L.Ed. 99 (1936). We doubt that the reasoning in *Mountain States* comports with *Rosewell,* but in any case it does not apply here, as Brooks has not sought any remedy that the Arizona courts lack power to grant.

Brooks claimed at oral argument that the state court remedy was inadequate because the Commission decisions he seeks to challenge became effective immediately upon issuance. Arizona law provides that "[n]o claim arising from any order or decision of the commission shall accrue in any court to any party or the state unless the party or the state makes, *before the effective date of the order or decision,* application to the commission for a rehearing." Ariz.Rev. Stat.Ann. § 40–253(B) (1985) (emphasis added). Brooks argues that this statute foreclosed all possibility of judicial review of these decisions in Arizona court. We disagree.

Although the statute in question is inartfully drafted, it is clear in context that the effective date referred to is the date by which an application for rehearing must be made. The right of any party to seek rehearing of "any final order or decision ... within twenty days of entry of the order or decision" is plainly set out in section 40–253(A). The date the decision takes effect is immaterial for this purpose. Equally plain is section 40–254(A), which allows "[a]ny party ... dissatisfied with any order or decision of the commission" to commence an action in Superior Court "within thirty days after rehearing is denied or granted." When the Commission stated that its decisions were effective immediately, it meant that they would take effect directly, not that an application for rehearing would not be entertained. Brooks has presented no evidence that either the Commission or the Arizona courts have ever denied review on the basis that the decision was effective immediately and no application for rehearing was made before this effective date. In the absence of any such evidence, section 40–253(B) does not make the state remedy uncertain.

In sum, because the state remedy is plain, speedy, and efficient within the terms of the Johnson Act, the district court lacked jurisdiction to entertain Brooks' complaint. The district court properly granted summary judgment in favor of both defendants on this ground.

## IV

Brooks raises two new arguments on appeal. He contends that the Johnson Act unconstitutionally constricts the jurisdiction of the lower federal courts, and that the statutory scheme for appealing Commission decisions offends due process. We decline to consider these claims, as Brooks failed to present them to the district court. *See Brogan v. San Mateo County,* 901 F.2d 762, 765 (9th Cir.1990).

## V

■ Appellees seek to recover their attorney's fees on appeal. This court has discretion to award attorney's fees and single or double costs when an appeal is frivolous. Fed.R.App.P. 38; *Glanzman v. Uniroyal, Inc.,* 892 F.2d 58, 61 (9th Cir. 1989). A frivolous appeal is one in which the result is obvious or the appellant's arguments are wholly without merit. *Id.* Because this appeal was not frivolous, appellees are not entitled to an award of fees.

## VI

Under the Eleventh Amendment, the district court lacked jurisdiction to hear Brooks' claim against the Commission. The Johnson Act precluded the district court from entertaining Brooks' claim against SSVEC.

AFFIRMED.