146 F.3d 718
 98 Cal. Daily Op. Serv. 4593, 98 Daily Journal
D.A.R. 6539
US WEST, INC., a Delaware Corporation; US West
Communications Group, Inc., a Colorado
Corporation; and US West Dex, Inc., a
Colorado Corporation,
Plaintiffs/Appellants,
v.
Sharon L. NELSON, in her official capacity as chairman of
the Washington Utilities and Transportation Commission;
Richard Hemstad, in his official capacity as commissioner of
the Washington Utilities and Transportation Commission; and
William R. Gillis, in his official capacity as commissioner
of the Washington Utilities and Transportation Commission,
Defendants/Appellees.
 No. 97-35551.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1998.
Decided June 16, 1998.
 
 David J. Burman, Perkins Coie, Seattle, WA, for plaintiffs/appellants.
 Sally G. Johnston, Assistant Attorney General, Olympia, WA, for defendants/appellees.
 Appeal from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-96-06025-FDB.
 Before: LAY, Senior Circuit Judge,* and PREGERSON and GRABER, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 1
 In 1982, the mammoth telecommunications corporation known as American Telephone and Telegraph Company was splintered in an antitrust consent decree. See United States v. American Tel. and Tel. Co., 552 F.Supp. 131 (D.D.C.1982), aff'd mem., 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Appellant US West, Inc. was one of several Regional Bell Operating Companies formed pursuant to that decree. US West, Inc. is a holding company for many subsidiaries, including appellants US West Dex, Inc. ("West Dex") and US West Communications Group, Inc. ("West Communications"). West Dex publishes and distributes telephone directories free to Washington residents, although it solicits advertisements from and sells those directories to a small number of people outside the state. West Communications provides local exchange telecommunications services in fourteen western and midwestern states, including Washington.
 
 
 2
 The Washington Utilities and Transportation Commission (the "Commission") regulates the rates of public utilities, including appellants' telecommunications services. Because public utilities are monopolies, the Commission must calibrate rates to simulate competition and to ensure that the utilities receive a fair return-no more, no less-on their investment. Generally, the higher a utility company's profits are in one year, the lower its rates can be in the following year.
 
 
 3
 Confronted with these objectives, the utility companies may be tempted by accounting practices that make their net profits appear as small as possible. For example, a company like US West owns many small affiliates. Some of those affiliates, like West Communications, are regulated by the Commission; others, such as West Dex, operate free of Commission regulation. This regulatory loophole might encourage US West to attribute its costs to the regulated West Communications, while shifting its profits to the unregulated West Dex. To correct for this and other similar incentives, the Commission has developed several accounting practices of its own. One of these practices, imputation, involves adjusting the revenue requirement of the regulated affiliate to realize portions of the cost savings, gains on sale, lower capital costs, profits, and revenues that the affiliated family-regulated or not-has experienced as a whole.
 
 
 4
 In 1996, the Commission set the rates that West Communications could charge for intrastate telephone rates by imputing income earned by West Dex. See Washington Util. and Transp. Comm'n v. U.S. West Communications, Inc., 1996 WL 350826 (Wash.U.T.C.). West Communications appealed that rate order to the King County Superior Court, which affirmed the order. West Communications appealed that decision to the Washington Supreme Court, which also affirmed. US West Comm., Inc. v. Washington Util. and Transp. Comm'n, 134 Wash.2d 48, 949 P.2d 1321 (1997).
 
 
 5
 On December 17, 1996, before the Washington Supreme Court handed down its decision, the US West companies[1] brought this action against the Commission defendants in federal district court, seeking declaratory and injunctive relief. In their complaint, the US West companies attacked the practice of imputation, something that they had not done before the Commission or in the Washington proceeding. Specifically, the US West companies alleged that the Commission's imputation of West Dex's profits from its yellow pages directories to West Communications violated their rights under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983. On March 17, 1997, the Commission defendants moved to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and the Johnson Act, 28 U.S.C. § 1342. On May 2, 1997, the district court granted the Commission defendants' motion, holding that the Johnson Act deprived it of jurisdiction.
 
 
 6
 The US West companies timely appeal.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 7
 We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1). We review questions of law, including the existence or lack of subject matter jurisdiction, de novo. Ma v. Reno, 114 F.3d 128, 130 (9th Cir.1997). Likewise, we review de novo the district court's dismissal for lack of subject matter jurisdiction. Evans v. Chater, 110 F.3d 1480, 1481 (9th Cir.1997). "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996) (citation omitted).
 
 ANALYSIS
 I. Jurisdiction Under the Johnson Act
 
 8
 The Johnson Act withdraws state utility rate cases from federal jurisdiction when certain conditions are met. That statute provides:The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
 
 
 9
 (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
 
 
 10
 (2) The order does not interfere with interstate commerce; and,
 
 
 11
 (3) The order has been made after reasonable notice and hearing; and,
 
 
 12
 (4) A plain, speedy and efficient remedy may be had in the courts of such State.
 
 
 13
 28 U.S.C. § 1342 (1988). Unless each of those four conditions is present, the Johnson Act does not deprive federal courts of jurisdiction. Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1054 (9th Cir.1991) (citation omitted). The burden of showing that the conditions have been met is on the party invoking the Johnson Act. See Nucor Corp. v. Nebraska Pub. Power Dist., 891 F.2d 1343, 1346 (8th Cir.1989) (stating that "[i]t is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction."). Additionally, we have held that the Johnson Act precludes federal court jurisdiction in actions seeking both injunctive and declaratory relief. See Brooks, 951 F.2d at 1054.
 
 1. Any Order Affecting Rates
 
 14
 Appellants maintain that the Johnson Act is inapplicable because they are not challenging the 1996 rate order; instead, appellants contend that they contest the constitutionality of the Commission's policy of imputation. To that end, their complaint characterizes the $81.4 million imputation of income from West Dex to West Communications as "illustrative" of the policy they attack. But the way that the US West companies have chosen to describe their grievance does not control whether the Johnson Act bars this action. The threshold inquiry is whether the complaint challenges any Commission "order affecting rates." It does not do so if the US West companies can state a federal claim-and be entitled to relief-without encroaching on the Commission's orders and rate-setting authority. See Hanna Mining Co. v. Minnesota Power and Light Co., 573 F.Supp. 1395, 1401 (D.Minn.1983) (holding that "any ruling that ... would obviously undercut the agency's authority" would challenge an order affecting rates within the meaning of the Johnson Act).[2] For several reasons, we agree with the district court that the US West companies here challenge an "order affecting rates."
 
 
 15
 First, we emphasize that the US West companies are not challenging a procedure that exists apart from the rate-making system. Where, as here, a party challenges the rate-making system, including any particular procedure that that system employs, the Johnson Act bars federal jurisdiction. See Minnesota Gas Co. v. Public Serv. Comm'n, 523 F.2d 581, 582 n. 1 (8th Cir.1975) (stating that the Johnson Act operated as a jurisdictional bar when the plaintiff directed its challenge "to the procedural and substantive fairness of an administrative order"). Moreover, even if imputation accurately is conceived as a Commission practice, a federal district court may not entertain an attack on that practice if it is part of the rate-making structure. By appellants' own allegations, imputation is an accounting practice that the Commission uses to derive intrastate telecommunications rates. As such, it is "an integral part of the rate structures" that may not be attacked in federal court under the Johnson Act. Tennyson v. Gas Serv. Co., 506 F.2d 1135, 1140 (10th Cir.1974). See also J & A Realty v. City of Asbury Park, 763 F.Supp. 85, 88-89 (D.N.J.1991) (holding that the Johnson Act barred federal jurisdiction even where the property owners argued that they challenged only the components and application of the rate rather than the rate order itself) (internal quotation marks omitted); National Teleinformation Network, Inc. v. Michigan Pub. Serv. Comm'n, 687 F.Supp. 330, 334-35 (W.D.Mich.1988) (stating that the Johnson Act prohibits action by district courts on " 'any order affecting rates' and not merely on elements of an order insofar as the individual elements affect rates"). Cf. Carlin Comm., Inc. v. Southern Bell Tel. and Tel. Co., 802 F.2d 1352, 1356 (11th Cir.1986) (holding that the Johnson Act did not bar jurisdiction when the utility company was "not challenging the ... rate structure approved by" the state commission). Because imputation is a Commission procedure that cannot be separated from its substantive expression in rate orders, the US West companies' challenge to imputation-however phrased-is a challenge to "any order affecting rates" as a matter of law.
 
 
 16
 Second, appellants' concession that the injunctive and declaratory relief that they seek "might have an impact on future rate orders" is as lethal to their claim as a straightforward challenge to the 1996 rate order would be. Even if the complaint accurately could be characterized as seeking to enjoin the Commission only from calculating future rate orders using the imputation accounting method, future rate orders are a subset of the larger set comprising "any order affecting rates." See 28 U.S.C. § 1342 (providing that "[t]he district courts shall not enjoin ... any order affecting rates") (emphasis added). See also Mountain Fuel Supply Co. v. Shell Oil Co., 533 F.Supp. 40, 44 (D.Utah 1981) (holding that the Johnson Act deprived the district court of jurisdiction where "a ... judgment in favor of [the] plaintiff ... would have a direct impact on future orders") (emphasis added).
 
 
 17
 Finally, even if we could divide rate-making policies from rate orders as a legal matter, allowing the US West companies to bring this action in federal court would offend the spirit of the Johnson Act. Previously, we reviewed the legislative history of the Act and concluded that allowing federal courts to hear indirect challenges to rate orders would enable plaintiffs to circumvent the statute:
 
 
 18
 Disgruntled rate-payers could march into state court armed with a federal judgment ... and, using the doctrine of collateral estoppel, demand injunctive relief. Congress did not intend to withdraw from federal courts the power to enjoin state rate orders directly but leave undisturbed the power to do so indirectly.
 
 
 19
 Brooks, 951 F.2d at 1054. The concern articulated in Brooks rings true in this case as well: Had the district court exercised jurisdiction over this dispute and decided that imputation was unconstitutional, US West could use that judgment to enjoin enforcement of the 1996 rate order.[3]
 
 
 20
 We conclude that the US West companies' challenge to the Commission's imputation practices is a rate action for the purposes of the Johnson Act. We now consider whether all four of the enumerated criteria of the Johnson Act have been met.
 
 
 21
 2. The Four Enumerated Conditions of the Johnson Act
 
 
 22
 The US West companies do not contest that jurisdiction is based solely on the alleged repugnance of the 1996 rate order to the United States Constitution.[4] See 28 U.S.C. § 1342(1). Nor do appellants dispute that the order was made after reasonable notice and a hearing. See 28 U.S.C. § 1342(3). Our review of the record confirms that those two conditions are met: The US West companies' complaint alleges First Amendment violations, and a hearing was conducted after appellants received reasonable notice. But the US West companies argue that the policy of imputation interferes with interstate commerce and that the Washington state courts cannot provide a plain, speedy, and efficient remedy. We turn to those issues.
 
 
 23
 a. Interference with Interstate Commerce
 
 
 24
 Generally, state agency orders setting intrastate telephone rates do not interfere with interstate commerce. See, e.g., Kalinsky v. Long Island Lighting Co., 484 F.Supp. 176, 178 (E.D.N.Y.1980) (so stating); Zucker v. Bell Tel. Co., 373 F.Supp. 748, 751 (E.D.Pa.1974) (same), aff'd, 510 F.2d 971 (3rd Cir.1975). Appellants allege that the Commission's use of imputation to set the rates of West Communications, which the Commission regulates, affects the interstate publication, sale, and distribution of yellow pages directories and advertising by West Dex, an enterprise that the Commission is not authorized to regulate.
 
 
 25
 Our resolution of this issue turns on whether the US West companies have presented evidence that the Commission's practice of imputation affected the cost of the publications that West Dex sold outside the State of Washington. Cf. Nucor, 891 F.2d at 1348 (holding that the Johnson Act was inapplicable where a plaintiff presented evidence and testimony that a rate order affected the cost of its goods in interstate commerce). We require such evidence because, under the wording of the Johnson Act, it is not enough that an intrastate rate-making policy merely "affect" interstate commerce. See 28 U.S.C. § 1342(2) (stating that jurisdiction is barred if an "order does not interfere with interstate commerce"). Unless the effects of the policy amount to interference, the Johnson Act bars federal jurisdiction:
 
 
 26
 Certainly all state rate-making action does have some influence upon or effect upon interstate commerce but these actions do not necessarily interfere with interstate commerce and the magnitude of the harm threatened by inadequate intrastate rates does not provide a cause for ignoring the clear mandate of the Johnson Act.
 
 
 27
 Louisiana Power & Light Co. v. Ackel, 616 F.Supp. 445, 448 (D.La.1985) (first emphasis added) (citing Kansas-Nebraska Natural Gas Co. v. City of St. Edward, 234 F.2d 436 (8th Cir.1956) (holding that incidental and indirect effects on interstate commerce do not rise to the level of "interference" for purposes of the Johnson Act)). Unfortunately, "[t]here is ... no established rule as to what degree of effect on interstate commerce is sufficient to constitute an interference therewith." Preston County Light and Power Co. v. Public Serv. Comm'n of W. Va., 297 F.Supp. 759, 763 (S.D.W.Va.1969). One court has stated that "a rate issued by a proper state body does not interfere with interstate commerce [within the meaning of the Johnson Act] unless it is directly burdensome or otherwise discriminatory of the interstate traffic." Kalinsky, 484 F.Supp. at 178.
 
 
 28
 The US West companies have not explained how the Commission's practice of imputation burdens their interstate business, either directly or indirectly. Imputation neither prescribes nor proscribes West Dex's content; nor does the procedure tax or limit what West Dex can charge for its advertisements, either inside or outside the State of Washington. Arguably, imputation burdens West Communications by lowering the rates that it could charge in the State of Washington. But such intrastate effects-even should they rise to the level of "interference"-lie outside the parameters of the Johnson Act.
 
 
 29
 For these reasons, we conclude that the district court committed no error when it determined that the Commission's 1996 rate order did not interfere with interstate commerce. Because 28 U.S.C. § 1342(2) was satisfied, the district court did not acquire jurisdiction under the Johnson Act.
 
 
 30
 b. Plain, Speedy, and Efficient Remedy
 
 
 31
 The US West companies also contend that, because they lack a plain, speedy, and efficient remedy in the state court, the Johnson Act did not deprive the district court of jurisdiction. See 28 U.S.C. § 1342(4) (stating that jurisdiction is barred if "[a] plain, speedy and efficient remedy may be had in the court of such state"). To be "plain, speedy and efficient," the state remedy need only satisfy minimal procedural requirements. See Brooks, 951 F.2d at 1055. Succinctly put, the state remedy is "plain" as long as the remedy is not uncertain or unclear from the outset; "speedy" if it does not entail a significantly greater delay than a corresponding federal procedure; and "efficient" if the pursuit of it does not generate ineffectual activity or unnecessary expenditures of time or energy. Id. (citing Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 517-21, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)).
 
 
 32
 To evaluate this issue, it is necessary to appreciate the role of accounting practices, including imputation, in the regulatory galaxy through which the Commission moves. The Washington legislature requires that rates of telecommunications companies be "fair, just, reasonable and sufficient." Wash. Rev.Code § 80.36.080. To that end, the Code instructs the Commission to ensure that the regulated utility company is not using its affiliates as a shelter for profits. Id. §§ 80.16.010 and 80.16.030. Within the sweep of the Commission's authority lies the power to prescribe accounting practices in the course of its annual audit of a public utility company's balance sheets. See id. § 80.04.080 (authorizing the Commission to differentiate the interstate from the intrastate expenses that the utility company incurs "according to such rules of division as the commission may prescribe").
 
 
 33
 Washington law provides the US West companies with a plain, speedy, and efficient remedy. The pertinent statute provides:
 
 
 34
 Any complainant or any public service company affected by any findings or order of the commission, and deeming such findings or order to be contrary to law, may, within thirty days after the service of the findings or order upon him or it, apply to the superior court of Thurston county for a writ of review, for the purpose of having the reasonableness and lawfulness of such findings or order inquired into and determined.
 
 
 35
 Id. § 80.04.170. A complainant who is dissatisfied with the superior court's decision may seek appellate review. Id. § 80.04.190.
 
 
 36
 The remedy is plain because Washington law expressly allows the state court to declare the Commission's order invalid. Id. § 80.04.170. See also Brooks, 951 F.2d at 1055 (noting that "[a] state remedy that provides the opportunity for a full hearing and a judicial determination of all constitutional claims satisfies the requirements of the Johnson Act"); Pacific Tel. & Tel. Co. v. Department of Pub. Serv., 19 Wash.2d 200, 142 P.2d 498, 507 (1943) (stating that Washington courts may hear constitutional challenges to rate orders).
 
 
 37
 A speedy remedy is available because the statute provides a short statute of limitations. If a utility company seeks state court review, a complaint challenging the legality of rates must be filed no later than thirty days after the Commission issues its order. See Wash. Rev.Code § 80.04.170. We already have said that, under similar laws in Arizona, a utility company had a speedy remedy for the purposes of the Johnson Act. Brooks, 951 F.2d at 1055-56 (so stating and citing cases in which "[o]ther courts have held similar schemes, requiring complaint in the first instance to the state commission and setting a short statute of limitations for seeking subsequent judicial review, adequate to satisfy the Johnson Act").
 
 
 38
 Finally, the remedy is efficient. Despite the US West companies' protestations to the contrary, the language of the relevant statute is sufficiently broad to permit all three of the companies to prosecute this action against the Commission. See Wash. Rev.Code § 80.04.170 (providing that "[a]ny complainant or any public service company affected by any ... order" may seek review in state court) (emphasis added). Because of the relationship among the US West companies, a procedure like imputation arguably would affect all three companies. Therefore, the US West companies would be "affected by [the Commission's] order" within the meaning of section 80.04.170. Any or all of those companies could become a "complainant," defined as "[o]ne who applies to the courts for legal redress by filing complaint (i.e., plaintiff)." Black's Law Dictionary 258 (5th ed.1979). For these reasons, and because the Commission's accounting methods are inseparable from the rate orders that those methods produce, that statute provides appellants with an efficient means to attack imputation.
 
 
 39
 In sum, we conclude that Washington law provided appellants with a plain, speedy, and efficient remedy for the specific issues that they raised in the district court. Accordingly, the district court properly granted the defendants' motion to dismiss, on the ground that the Johnson Act deprived that court of jurisdiction.
 
 II. Leave to Amend
 
 40
 Although the US West companies did not seek leave to amend their complaint, they argue that the district court erred when it failed to grant them leave. In these circumstances, we affirm the district court in its decision to dismiss the action with prejudice.
 
 
 41
 Ordinarily, "[i]n dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995) (citation and internal quotation marks omitted); see Fed.R.Civ.P. Rule 15(a). Assuming arguendo that this principle applies to cases dismissed for lack of subject matter jurisdiction, as well as to cases dismissed on a 12(b)(6) motion, we conclude that the US West companies could not assert other facts that would create a triable issue of fact as to whether its action would affect a rate order, whether that order interfered with interstate commerce, or whether the Washington courts could provide a plain, speedy, and efficient remedy. For those reasons, the district court properly granted the defendants' motion to dismiss without offering the US West companies leave to amend their complaint.
 
 CONCLUSION
 
 42
 We hold that the Johnson Act precluded the district court from entertaining the US West companies' constitutional claims against the Commission and that the district court properly dismissed this case with prejudice. Because our application of the Johnson Act resolves the jurisdictional question, we need not consider whether abstention was appropriate under some other doctrine. See, e.g., Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 43
 AFFIRMED.
 
 
 
 *
 Donald P. Lay, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 Throughout this opinion, we refer to appellants US West, Inc., West Dex, and West Communications collectively as "the US West companies."
 
 
 [2]
 Because of the limited number of cases in this circuit dealing with the Johnson Act, we consider cases from other circuits in reaching our decision
 
 
 [3]
 This possibility distinguishes appellants' action from the situations faced by other courts that have concluded that no rate order was being challenged. See Public Utils. Comm'n v. United States, 355 U.S. 534, 540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958) (noting that granting relief to plaintiffs who challenged a statute that required the United States to seek prior state approval of the rates it negotiated with common carriers effected "no violation of [the Johnson Act's] mandate in the relief granted here"); Carlin Comm'n, 802 F.2d at 1356 (noting that "[t]he relief [plaintiffs sought], if granted, would not in any way affect the rates established by" the rate-making body)
 
 
 [4]
 Although the US West companies also have pleaded a violation of 42 U.S.C. § 1983, we agree with the other courts that have held that "[a] plaintiff may not use § 1983 as an 'end run around the Johnson Act.' " J & A Realty, 763 F.Supp. at 88 (quoting Peoples Nat'l Util. Co. v. Houston, 837 F.2d 1366, 1368 (5th Cir.1988))