**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEX CANNARA, an individual; GENE A. NELSON, an individual, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> KARLA NEMETH, California Department of Water Resources Director; MARYBEL BATJER, California Public Utilities Commission President; LIANE RANDOLPH, California Public Utilities Commissioner; MARTHA GUZMAN ACEVES, California Public Utilities Commissioner; CLIFFORD RECHTSCHAFFEN, California Public Utilities Commissioner; GENEVIEVE SHIROMA, California Public Utilities Commissioner; KEELY BOSLER, California Department of Finance Director; BETTY YEE, California State Controller; FIONA MA, California State Treasurer; CALIFORNIA DEPARTMENT OF WATER RESOURCES; CALIFORNIA PUBLIC UTILITIES COMMISSION; CALIFORNIA DEPARTMENT OF FINANCE, <br> *Defendants-Appellees*. | No. 20-16202 <br><br> D.C. No. 3:19-cv-04171-JD <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted April 12, 2021
San Francisco, California

Filed December 30, 2021

Before:  Mary H. Murguia, Chief Judge, and Ryan D.
Nelson and Danielle J. Forrest[*], Circuit Judges.

Opinion by Judge Forrest

## SUMMARY[**]

### Johnson Act, 28 U.S.C. § 1342

The panel affirmed the district court's order dismissing for lack of subject matter jurisdiction an action brought by public utility ratepayers challenging California Assembly Bill 1054, which addresses the financial burdens that wildfires impose on electrical utilities.

Assembly Bill 1054 ("AB 1054"), among other things, created a "Wildfire Fund" to cover utility liabilities resulting from wildfires and instructed the California Public Utilities Commission ("CPUC") to consider imposing a surcharge on

---

[*] Formerly known as Danielle J. Hunsaker.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

ratepayers to help capitalize this Fund. The CPUC decided to impose the surcharge contemplated by AB 1054, and Plaintiffs challenged AB 1054 as it relates to the Wildfire Fund and ratepayer surcharge under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. Defendants moved to dismiss Plaintiffs' claims on several grounds, including lack of subject matter jurisdiction under the Johnson Act, 28 U.S.C. § 1342, which deprives courts of jurisdiction over all suits affecting state-approved utility rates.

The panel concluded that Plaintiffs' challenge was subject to the Johnson Act, and citing *US West*, *Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998), rejected Plaintiffs' assertion that the Johnson Act did not apply because their claims were non-rate related. The panel noted that the First Amended Complaint described the wildfire surcharge as the "heart of [their] due process claims." And their takings claim was premised on an alleged "unjust and unreasonable rate." Indeed, the second paragraph of the First Amended Complaint alleged "a multi-billion-dollar scheme for California's utility customers to finance the [utilities'] fire liabilities." But most significant, the relief that Plaintiffs sought conclusively demonstrated that they were challenging a ratemaking: they asked the Court to find unconstitutional and enjoin only sections 6 and 16 of AB 1054, which created the Wildfire Fund and the process by which a utility company may seek assistance from the Fund. This relief would necessarily "affect state-approved utility rates," despite Plaintiffs' attempts to reframe their claims as non-rate related.

The panel further held that the CPUC surcharge proceedings satisfied the Johnson Act's procedural requirements, noting that the process that the CPUC

provided in its surcharge proceedings surpassed what had been accepted in prior cases. The CPUC allowed anyone interested to become a party to the proceedings, circulated notice of the hearing in the CPUC's widely disseminated monthly newsletter, assisted people unfamiliar with CPUC procedures, allowed all parties to present their opinions at multiple stages of the process, allowed oral argument, accepted comments on the Proposed Decision, and responded to those comments in the Final Decision. Contrary to the Plaintiffs' argument, the CPUC's decision not to hold an evidentiary hearing did not violate the Johnson Act's procedural requirements.

## COUNSEL

Michael J. Aguirre (argued) and Maria C. Severson, Aguirre & Severson LLP, San Diego, California, for Plaintiffs-Appellants.

Gabrielle D. Boutin (argued), Deputy Attorney General; Benjamin M. Glickman, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the Attorney General of California, Sacramento, California; for Defendants-Appellees Karla Nemeth, California Department of Water Resources Director, Keely Bosler, California Department of Finance Director; Betty Yee, California State Controller; Fiona Ma, California State Treasurer; California Department of Finance, and the California Department of Water Resources.

Christofer C. Nolan (argued), Arocles Aguilar, Christine J. Hammond, and Inna Vinogradov, California Public Utilities Commission, San Francisco, for Defendants-Appellees

California Public Utilities Commission, Marybel Batjer, California Public Utilities Commission President, and California Public Utilities Commissioners Liane Randolph, Martha Guzman Aceves, Clifford Rechtschaffen, and Genevieve Shiroma.

## OPINION

FORREST, Circuit Judge:

The question presented is whether the Johnson Act, 28 U.S.C. § 1342, which bars federal courts from exercising jurisdiction over disputes concerning state public utility rate-making orders, deprives the court of subject matter jurisdiction over the Plaintiff ratepayers' challenge to California Assembly Bill 1054 (AB 1054). AB 1054 addresses the financial burdens that wildfires impose on electrical utilities. Among other things, it created a "Wildfire Fund" to cover utility liabilities resulting from wildfires and instructed the California Public Utilities Commission (CPUC) to consider imposing a surcharge on ratepayers to help capitalize this Fund. The CPUC decided to impose the surcharge contemplated by AB 1054, and Plaintiffs challenge AB 1054 as it relates to the Wildfire Fund and ratepayer surcharge under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. Because we conclude that the Johnson Act applies to this case, we lack subject matter jurisdiction.

## I. BACKGROUND

### A. AB 1054 & CPUC Ratemaking Proceedings

California passed AB 1054 in 2019 to address the "increased risk of catastrophic wildfires." 2019 Cal. Legis.

Serv. Ch. 79 (West) (AB 1054). AB 1054 included numerous wildfire prevention and mitigation measures; relevant here is the Wildfire Fund. Cal. Pub. Util. Code §§ 3281–89 (West 2019). The statute identified multiple funding sources for capitalizing the Wildfire Fund, including utility shareholder contributions, bond proceeds, loans from California's surplus fund, and—the focus here—revenue from a potential ratepayer surcharge. *Id.* § 3285.

AB 1054 directed the CPUC to "initiate a rulemaking proceeding to consider" imposing a "nonbypassable charge from ratepayers . . . to support the [Wildfire Fund]." *Id.* § 3289(a)(1). AB 1054 imposed an expedited timeline for this process. For example, the CPUC was required to initiate the rulemaking proceeding within 14 days of AB 1054's enactment. *Id.* If the CPUC found that a ratepayer surcharge was "just and reasonable," it was required to "direct each [utility] to impose and collect that charge." *Id.* § 3289(a)(2).

The CPUC initiated a rulemaking proceeding as required by Section 3289. The Order Instituting Rulemaking (OIR) described the procedures that the CPUC would use to evaluate the potential surcharge and the process for interested parties to participate in the rulemaking proceedings. It provided multiple avenues for interested parties to participate. Anyone who appeared at the pre-hearing conference requesting party status would be made a party to the proceeding, and anyone could request to be added to an "information only" service list or could receive copies of the relevant documents without being added to the service list. The OIR also provided the contact information for the CPUC's Public Advisor so that a person interested in participating in the proceeding could get assistance. Finally, as required by CPUC rules, the OIR preliminarily

categorized the proceeding as a "ratesetting" and preliminarily determined that hearings were unnecessary.

Before the pre-hearing conference, multiple groups and individuals filed statements as outlined in the OIR. At the pre-hearing conference, interested parties were allowed to present their opinions on the proposed surcharge, and twenty-five groups and individuals received party status. Although Plaintiffs themselves did not participate in these proceedings, their counsel in this case participated on behalf of ratepayer Ruth Hendricks, who was granted party status. After the pre-hearing conference, the CPUC's assigned commissioner circulated a Scoping Memo and ruling.

Like the OIR, the Scoping Memo provided the process and timeline for the surcharge proceeding. The Scoping Memo provided: "This proceeding is limited in scope to . . . whether the Commission should authorize and order the collection of a non-bypassable charge from ratepayers . . . to provide the legislatively-determined revenue requirement for the ratepayer contributions to California's new Wildfire Fund." It also addressed comments raised at the pre-hearing conference, solicited comments on additional issues, and determined that an evidentiary hearing was not required. Finally, responding to concerns about the expedited process, the Scoping Memo noted that AB 1054 mandated an accelerated timeline and that the proceedings met "minimum due process requirements." *See id.* § 3289(b) ("[N]o later than 90 days after the initiation of the rulemaking proceeding, [the CPUC] shall adopt a decision regarding the imposition of the charge.").

After the Scoping Memo, but before opening comments were due, Plaintiffs' counsel, representing Ms. Hendricks, moved to disqualify the assigned CPUC commissioner, arguing that his refusal to hold an evidentiary hearing

indicated that his decision was a foregone conclusion. Counsel also requested oral argument. Shortly thereafter, the Administrative Law Judge (ALJ) issued his proposed decision concluding that the Wildfire Fund-related charges were just and reasonable and responding to concerns about the expedited process and lack of an evidentiary hearing.

During the comment period for the Proposed Decision, the ALJ held oral argument where interested parties could comment on the proceedings. Plaintiffs' counsel repeated their procedural concerns and their concerns with a Wildfire Fund surcharge. Not long after, the CPUC issued its Final Decision approving the ratepayer surcharge. The Final Decision directly responded to the due process concerns raised at oral argument; it noted that "few restrictions were placed on the parties' ability to provide comments in a form of their choosing" and found that "due process was provided." Plaintiffs' counsel moved for rehearing, which the CPUC denied.

## B. District Court Proceedings

Before the CPUC began its surcharge proceeding, Plaintiffs filed this action in federal district court against the CPUC and numerous state officials tasked with implementing the Wildfire Fund. Plaintiffs alleged that AB 1054 and the surcharge proceeding violated their right to procedural due process under the Fourteenth Amendment and qualified as an unlawful taking under the Fifth Amendment. After the surcharge proceeding, Plaintiffs amended their complaint to include challenges to the outcome of that proceeding. The First Amended Complaint (FAC) summarized "the heart of Plaintiffs' due process claims" as follows:

> Defendants hatched a scheme with high-ranking PG&E officers to transfer future wildfire liabilities onto utility customers, which AB 1054 codifies into law by: (1) eradicating the previous legal standard for wildfire cost recovery so IOUs have a presumption of reasonableness; (2) burdening utility customers with a multi-billion-dollar *charge* that will be imposed on them until 2036, and (3) establishing a wildfire fund for utility customers to continuously subsidize IOU fire liabilities. All of these actions were taken without providing Plaintiffs or other utility customers any meaningful opportunity to be heard.

For their takings claim, Plaintiffs alleged that AB 1054 "imposes an unjust and unreasonable electric rate, thus effectuating a taking of utility customer property without just compensation." Plaintiffs sought: (1) declaratory relief that AB 1054 was unconstitutional; (2) injunctive relief preventing Defendants from enforcing section 6 of AB 1054 (creating the Wildfire Fund claims process) and section 16 (creating the Wildfire Fund and directing the CPUC to initiate ratemaking proceedings); and (3) attorney fees.

Defendants moved to dismiss Plaintiffs' claims on several grounds, including lack of subject matter jurisdiction under the Johnson Act. The district court questioned the parties about the Johnson Act's applicability at a motions hearing and directed them to file briefs regarding the "reasonable notice and hearing" requirement in that statute. After reviewing the parties' additional briefing, the district court dismissed Plaintiffs' claims with prejudice for lack of jurisdiction. The district court concluded that "a plainer

challenge to a state ratesetting order is hard to imagine" and "the CPUC proceeding satisfied the reasonable notice and hearing element of the Johnson Act." Plaintiffs timely appealed.

## II.  DISCUSSION

Under the Johnson Act, federal courts lack jurisdiction over "all suits affecting state-approved utility rates." *Abcarian v. Levine*, 972 F.3d 1019, 1029–30 (9th Cir. 2020). The Johnson Act states:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
>
> (1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2) The order does not interfere with interstate commerce; and,
>
> (3) The order has been made after reasonable notice and hearing; and,
>
> (4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342. The party invoking the Johnson Act must show that all the statutory requirements are met. *Id.*; *see also US West*, *Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998). We review de novo a district court's dismissal for lack of

subject matter jurisdiction under the Johnson Act. *Abcarian*, 972 F.3d at 1029 n.6.

Here, the parties dispute two of the statutory requirements: (1) whether Plaintiffs' suit challenges an "order affecting rates" and, if yes, (2) whether that order was made after reasonable notice and hearing.

## A. Order Affecting Rates

Although the text of the Johnson Act focuses on ratemaking "orders," we have construed it to apply to "all suits affecting state-approved utility rates." *Id.* at 1029–30. Indeed, when "a party challenges the rate-making system, including any particular procedure th[e] . . . system employs, the Johnson Act bars federal jurisdiction." *US West*, 146 F.3d at 722. We broadly interpret the Johnson Act as prohibiting both direct challenges to a specific rate-setting order, as well as indirect challenges that "might have an impact on future rate orders" or that could be used to enjoin enforcement of a past order. *Id.* at 722–23; *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1054 (9th Cir. 1991) ("Congress did not intend to withdraw from federal courts the power to enjoin state rate orders directly but leave undisturbed the power to do so indirectly.").

A plaintiff's description or characterization of the challenge is not determinative. *US West*, 146 F.3d at 722. Nor does a plaintiff avoid the Johnson Act by alleging constitutional claims that are unrelated to state ratemaking orders. *Id.*; *Abcarian*, 972 F.3d at 1030. The plaintiffs in *US West*, for example, claimed to challenge a policy rather than a specific rate order. 146 F.3d at 722. We were not convinced and instructed that "the way that [plaintiffs] have chosen to describe their grievance does not control whether the Johnson Act bars this action." *Id.* And in *Abcarian*, we

explained that the Johnson Act would "be a nullity if it could be evaded through the simple artifice of adding *some* other federal claim to the complaint." 972 F.3d at 1030. We emphasized the jurisdictional nature of the Johnson Act:

> In barring federal courts from exercising jurisdiction *to interfere with state rate orders* in specified circumstances, the text of the Johnson Act necessarily focuses on the jurisdictional basis on which the court is asked to *grant* such relief. The happenstance that there may or may not be other claims in the *case* is irrelevant—especially given the fact that . . . the additional claims asserted in the action may have nothing to do with state rate orders at all.

*Id.* (internal quotation marks and alterations omitted). In sum, we "broadly construe[] the Act's jurisdictional bar to oust federal courts of jurisdiction over all challenges affecting rates." *Brooks*, 951 F.2d at 1054 (internal quotation marks and citation omitted); *US West, Inc. v. Tristani*, 182 F.3d 1202, 1207 (10th Cir. 1999) (explaining the Johnson Act is designed to keep rate challenges out of federal courts "lock, stock, and barrel") (relying on *US West v. Nelson* and other Ninth Circuit cases interpreting the Act).

Here, we conclude that Plaintiffs' challenge is subject to the Johnson Act. The First Amended Complaint describes the wildfire surcharge as the "heart of [their] due process claims." And their takings claim is premised on an alleged "unjust and unreasonable rate." Indeed, the second paragraph of the First Amended Complaint alleges "a multi-billion-dollar scheme for California's utility customers to finance the [utilities'] fire liabilities." But most significant,

the relief that Plaintiffs seek conclusively demonstrates that they are challenging a ratemaking: they ask the Court to find unconstitutional and enjoin *only* sections 6 and 16 of AB 1054, which create the Wildfire Fund and the process by which a utility company may seek assistance from the Fund. This relief would necessarily "affect state-approved utility rates," despite Plaintiffs' attempts to reframe their claims as non-rate related. *See Abcarian*, 972 F.3d at 1029–30.

Plaintiffs argue that the Johnson Act does not apply because their constitutional challenge to AB 1054 affects rates only "incidentally." If we were interpreting the Johnson Act on a blank slate, we might find Plaintiffs' argument more persuasive as the plain text of the Act references only direct challenges to rate orders. *See* 28 U.S.C. § 1342. But our precedent establishes that the substance and effect of a plaintiff's challenge drives our jurisdictional analysis, not the form. *US West*, 146 F.3d at 722. Thus, "[p]laintiffs' concession that the injunctive and declaratory relief that they seek 'might have an impact on future rate orders' is as lethal to their claim as a straightforward challenge to the 1996 rate order would be." *Id.* at 723; *see also Abcarian*, 972 F.3d at 1030.

If we allowed Plaintiffs to avoid the Johnson Act based on their characterization of their challenge, we would render the Act a nullity just as surely as if we allowed plaintiffs asserting non-rate-based claims to avoid the Johnson Act. *See Abcarian*, 972 F.3d at 1030. We decline to do so and hold that Plaintiffs' claims challenge ratemaking within the meaning of the Johnson Act, as this Circuit's precedent has interpreted it.

## B. Reasonable Notice and Hearing

The parties also dispute whether the surcharge proceedings provided "reasonable notice and hearing." 28 U.S.C. § 1342. We have not addressed the Johnson Act's procedural requirement in depth. In *Brooks*, we concluded that "hold[ing] a hearing before approving any rate change" and "provid[ing] thirty days notice" was sufficient. 951 F.2d at 1054. In *Abcarian*, we addressed this requirement in a single conclusory sentence: "The official records of the City Council confirm that the three rate-setting ordinances at issue were indisputably 'made after reasonable notice and hearing.'" 972 F.3d at 1032 (noting plaintiffs did not dispute this issue below).

Here, the district court made two alternative holdings. First, the district court held that the surcharge proceedings satisfied the Johnson Act's procedural requirement as a factual matter. And second, it held that the CPUC's determination that the state-law procedural requirements were satisfied is "preclusive" of whether the Johnson Act is satisfied. That is, the district court held that sufficient procedural protection is provided so long as the ratemaking body complied with its own procedures. We reject the district court's second categorical holding. Nothing in our prior precedent or the text of the Johnson Act dictates this conclusion. Compliance with state-law procedures is certainly relevant in assessing whether a ratemaking order was entered following "reasonable notice and hearing," but it is not itself determinative because state law could provide

fewer procedural protections than the Johnson Act's basic standard requires.[1]

We do not need to wrestle with what minimum procedural protections satisfy the Johnson Act in this case because the process that the CPUC provided in its surcharge proceedings surpassed what we have accepted in prior cases. *See, e.g.*, *Brooks*, 951 F.2d at 1054 (holding that Arizona's hearing and 30-days' notice requirement "satisfy the Johnson Act's requirement of reasonable notice and hearing"). The CPUC allowed anyone interested to become party to the proceedings, circulated notice of the hearing in the CPUC's widely disseminated monthly newsletter, assisted people unfamiliar with CPUC procedures, allowed all parties to present their opinions at multiple stages of the process, allowed oral argument, accepted comments on the Proposed Decision, and responded to those comments in the Final Decision. Contrary to the Plaintiffs' argument, the CPUC's decision not to hold an *evidentiary* hearing does not violate the Johnson Act. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances"). Based on

---

[1] The district court cited *Brooks* in holding that a state determination that state procedural requirements were satisfied is preclusive, but *Brooks* did not hold that compliance with state-law procedures is determinative of whether the Johnson Act's "reasonable notice and hearing" requirement is satisfied. *Brooks* held only that the state administrative decision concluding that the state procedures were satisfied prevented the plaintiff from arguing to the contrary in federal court. 951 F.2d at 1054.

the record presented here, we conclude that the CPUC satisfied the Johnson Act's procedural requirements.

**AFFIRMED**.