**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PERRY WILLIAMS; TEDDI WILLIAMS,
d/b/a Williams Transport,
               *Plaintiffs-Appellees,*

v.

PROFESSIONAL TRANSPORTATION,
INCORPORATED; UNITED LEASING,
INCORPORATED; CSX
TRANSPORTATION, INCORPORATED,
           *Defendants-Appellants.*

No. 99-1011

PERRY WILLIAMS; TEDDI WILLIAMS,
d/b/a Williams Transport,
               *Plaintiffs-Appellants,*

v.

PROFESSIONAL TRANSPORTATION,
INCORPORATED; UNITED LEASING,
INCORPORATED; CSX
TRANSPORTATION, INCORPORATED,
           *Defendants-Appellees.*

No. 99-1080

Appeals from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CA-95-81)

Argued: December 1, 1999

Decided: July 1, 2002

Before WIDENER and LUTTIG, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed in part and reversed in part by published opinion. Judge Widener wrote the opinion, in which Judge Luttig and Judge Seymour concurred.

---

## COUNSEL

**ARGUED:** John Harlan Mahaney, II, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellants. Michael Warren Carey, CAREY, HILL, SCOTT, WINTER & JOHNSON, P.L.L.C., Charleston, West Virginia, for Appellees. **ON BRIEF:** Andrew S. Zettle, HUDDLESTON, BOLEN, BEATTY, PORTER & COPEN, Huntington, West Virginia, for Appellants. Pamela C. Deem, CAREY, HILL, SCOTT, WINTER & JOHNSON, P.L.L.C., Charleston, West Virginia, for Appellees.

---

## OPINION

WIDENER, Circuit Judge:

Defendant, CSX Transportation, Inc. ("CSXT"), a subsidiary of CSX Corporation, appeals from the district court's judgment order and accompanying findings of fact and conclusions of law enforcing a previous settlement agreement between CSXT and plaintiff, Williams Transport ("Williams"). CSXT also appeals the district court's award of attorneys' fees to Williams. Williams cross-appeals the district court's denial of an award of punitive damages. We affirm the district court's grant of Williams' motion to enforce the settlement; however, we reverse the district court's award of attorneys' fees to Williams. We also affirm the district court's denial of punitive damages to Williams.

### I.

Williams is a common carrier authorized under the laws of West Virginia to provide specialized limousine service to the public. CSXT has utilized Williams for transport of its train crewmen and property in areas of West Virginia since 1987. The settlement agreement at

issue in this case stems from an underlying dispute between the parties that began in 1993.

On February 11, 1993, Williams filed a complaint against CSXT, Professional Transportation, Inc. ("Professional"), and United Leasing Inc. ("United Leasing") before the West Virginia Public Service Commission ("Public Service Commission") alleging that Professional and United Leasing displaced Williams pursuant to an illegal contract with CSXT. On March 18, 1994, the Public Service Commission determined that neither Professional nor United Leasing had authority to provide transportation services to CSXT and ordered them to cease and desist from operation of the unlawful transportation services. Following the Public Service Commission's February 2, 1995 decision, Williams filed a complaint in the district court against Professional and United Leasing alleging that the unlawful transportation services provided for CSXT resulted in injury to Williams. While that district court case was pending, CSXT filed a complaint against Williams before the Public Service Commission alleging that Williams had billed CSXT improperly under its tariff. Subsequently, Williams filed a petition with the Public Service Commission to clarify the tariff. The parties disputed the correct interpretation of Williams' tariff and whether a $30 per hour alternative rate could be charged for waiting time.

Before the scheduled jury trial commenced in the district court, the parties met to explore settlement options. On May 23, 1997, Williams and CSXT, participating on behalf of Professional and United Leasing pursuant to an indemnity agreement, reached a settlement agreement at a settlement conference held before the district court.[1] The settlement agreement contained the following terms:

1.  CSXT would pay to Williams $140,000;

2.  CSXT and Williams would enter into a five-year non-cancellable, but transferrable contract, whereby Williams would be the exclusive provider of intrastate ser-

---

[1]According to Williams, the final settlement conference was off the record. Neither a transcript nor notes from the conference are provided in the Joint Appendix.

vice to CSXT in certain areas in accordance with the Public Service Commission's rules, regulations and Williams' tariff; and

3. CSXT agreed to dismiss its overcharge case against Williams in the Public Service Commission.

In order to avoid a conflict with a settlement agreement CSXT had entered in a similar but unrelated action, the settlement agreement between CSXT and Williams was contingent upon Williams' success in a proceeding it had instituted against Mack's Transportation, one of its competitors, to have the Public Service Commission declare Mack's operating certificates dormant. The court noted that if the contingency did not come to fruition, the case would not be settled. The settlement agreement also permitted Williams to continue its tariff clarification petition in the Public Service Commission.[2]

After the May 23rd settlement conference, the following occurred: CSXT dismissed its overcharge case against Williams; the Public Service Commission declared Mack's Transportation dormant on April 10, 1998, removing the contingency for the settlement agreement to commence; and the parties met several times to negotiate the terms of the five-year contract, never reaching agreement on the terms. As previously agreed, the parties continued to litigate the tariff clarification and interpretation in the Public Service Commission. While the rate dispute continued, the parties agreed that Williams would charge and CSXT would pay for the services according to the billing practices used previously, that CSXT's payment of such charges did not constitute its admission of the charges' correctness, and that CSXT would forgo any right to initiate a complaint case or seek a refund of its payments pending resolution of the rate matter. On December 4, 1997, the parties filed a joint motion to dismiss without prejudice the tariff clarification case in the Public Service Commission. After the dismissal, the parties continued under the previous billing scheme until March of 1998 when CSXT began rejecting most of Williams'

---

[2]On May 13, 1997, CSXT filed a written protest with the Public Service Commission in Williams' tariff clarification proceeding to protest Williams' interpretation of its tariff. The Public Service Commission allowed CSXT to intervene as a party to prosecute its opposition.

invoices and returning them to Williams for recalculation and resubmission. CSXT again claimed the bills were overcharges. Nonetheless, the parties continued their unsuccessful negotiations over terms of the five-year contract. On May 4, 1998, CSXT filed a formal complaint in the Public Service Commission in which it alleged that after the May 23, 1997 settlement, Williams continued to overcharge CSXT for its services.

Although the parties continued to propose and counter-propose terms for their contract, on June 2, 1998, Williams informed CSXT it would seek a hearing before the district court to enforce the settlement agreement. Williams reiterated it was still willing to negotiate, but not under its current tariff. On July 21, 1998, the district court held a hearing on Williams' motion to reopen[3] and enforce the settlement agreement. The district court issued its memorandum opinion and order on August 20, 1998, granting the Williams' motion to enforce the settlement agreement and finding that CSXT violated the terms of the agreement by not negotiating in good faith, by refusing to pay Williams' invoices, and by filing a second complaint in the Public Service Commission. The court also granted the Williams' attorneys' fees. Subsequently, CSXT filed a motion described on the docket sheet as one for clarification and/or reconsideration. On October 27, 1998, the court granted the motion to reconsider and set the matter for rehearing, withdrawing its previous memorandum opinion and order.[4] After the rehearing, the court issued its findings of facts and conclusions of law and judgment order on December 11, 1998, enforcing the settlement agreement; ordering CSXT to pay Williams all past due invoices at the rates specified in Williams' tariff; ordering CSXT and Williams to enter into the five-year exclusive, noncancellable, but transferable contract at Williams' current tariff rate, or at an agreed upon rate to be approved by the Public Service Commission; and ordering CSXT to pay Williams all its reasonable costs and attor-

---

[3]In February 1998, the district court closed the case for statistical purposes. The court reserved its authority to reopen the action upon motion of any party and for good cause shown.

[4]On December 9, 1998, the court ordered the joinder of CSXT as a party to the action. Prior to the order, CSXT had participated in the action because it assumed the defense of Professional and United Leasing under an indemnity agreement.

neys' fees incurred incident to these proceedings. The court denied Williams' request for punitive damages. Both parties appeal from that order.

## II.

As an initial matter, CSXT asserts that the district court's order exceeds the scope of its jurisdiction specified by the Johnson Act of 1934, 28 U.S.C. § 1342. The Johnson Act provides in pertinent part:

> [T]he district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or rate-making body of a State political subdivision where:

> (1)   Jurisdiction is based solely on diversity of citizenship . . . and,

> (2)   The order does not interfere with interstate commerce; and,

> (3)   The order has been made after reasonable notice and hearing; and,

> (4)   A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342. The Johnson Act's limitation on federal jurisdiction applies only when all four of its conditions are met. See *Aluminum Co. of Am. v. Utilities Comm'n of N. C.*, 713 F.2d 1024, 1028 (4th Cir. 1983), *cert. denied*, 465 U.S. 1052 (1984). The party invoking the Johnson Act has the burden to show the conditions have been met. See *US West, Inc. v. Nelson*, 146 F.3d 718, 722 (9th Cir. 1998) (citing *Nucor Corp. v. Nebraska Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). We must first determine if the district court's order is an "order affecting rates chargeable by a public utility." 28 U.S.C. § 1342; *Shrader v. Horton*, 471 F.Supp. 1236, 1238-39 (W.D. Va. 1979), *aff'd*, 626 F.2d 1163 (4th Cir. 1980).

CSXT argues that the court's order established the price Williams may collect, which CSXT contends is above the lawful price set forth in the tariff, and that by setting this price, the court's order restrains the operation of or compliance with the Public Service Commission's specific rate order. As a matter of fact, however, the court ordered CSXT to pay the past invoices it had returned unpaid to Williams "at the rates specified in Williams' current tariff in the amounts set forth in those invoices." As to the five-year contract rate, the court reiterated that "[t]he contract rate shall be the rate contained in Williams' current tariff unless, and until, the parties agree on a new, or different, rate," but recognized "that any contract rate is subject to P[ublic] S[ervice] C[ommission] approval." The court did not resolve the rate interpretation dispute between the parties, rather it directed the parties to submit disputes about the interpretation of the tariff to the Public Service Commission.

We agree with Williams' characterization of the court's order as one merely enforcing a settlement agreement. Williams' underlying suit in this case was not a challenge to any order of the Public Service Commission, instead it alleged two causes of action: (1) injury caused by violation of certain statutes relating to the illegal transportation of passengers and (2) tortious interference. The settlement agreement encompassed a compromise of the parties' claims. Furthermore, any rate disputes and new rates agreed upon by the parties must be submitted to the Public Service Commission. The court declined to make any orders affecting these rates. We are thus of opinion that the Johnson Act does not bar federal jurisdiction in this matter. In that respect, we observe that the case of *Shrader v. Horton*, infra, even if not on all fours, is so near thereto as to be persuasive, and we follow that precedent.

### III.

Neither party appeals the portion of the judgment order ordering CSXT to pay Williams the sum of $140,000 with interest from April 10, 1998.[5] CSXT appeals the portions of the judgment ordering

---

[5]On April 10, 1998, the Public Service Commission affirmed the determination of Mack's Transportation's dormancy, removing the settlement agreement's contingency factor.

immediate payment to Williams of all past due invoices at Williams' current tariff and payment of all submitted invoices until the parties execute their new contract. CSXT also disputes the court's construction of the settlement agreement as barring CSXT from instituting its second overcharge case in the Public Service Commission. The court found that CSXT breached the settlement agreement by "[f]iling a new overcharge complaint case with the PSC alleging that invoices were billed improperly under Williams' tariff despite the fact that a virtually identical case had been dismissed as part of the settlement." The May 23, 1997 settlement agreement required CSXT to dismiss its pending overcharge case in the Public Service Commission, which it did. However, on May 4, 1998, CSXT filed a second complaint asserting approximately the same factual and legal claims advanced in the first overcharge case.

A trial court possesses the inherent authority to enforce a settlement agreement and to enter judgment based on that agreement. *Perry v. Timken*, 849 F.2d 130, 132 (4th Cir. 1988). A settlement agreement upon a contract must be interpreted as such. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). Because contract construction is a question of law, we review the district court's interpretation of the settlement agreement *de novo. Nehi Bottling Co. v. All-American Bottling Corp.*, 8 F.3d 157, 161 (4th Cir. 1993). We review the district court's order enforcing the settlement agreement for abuse of discretion. *Young v. FDIC*, 103 F.3d 1180, 1194 (4th Cir. 1997).

Both parties agreed they reached a binding settlement agreement, and both sides asked the court to enter an enforcement order. After a hearing on the matter, the court interpreted the settlement agreement as barring CSXT's second overcharge case because CSXT agreed to forego the prior overcharge case based on the same claims. CSXT argued that it never agreed to forego claims against Williams for overcharges occurring after May 23, 1997 and that it could file its overcharge case despite having just dismissed it. The court, having participated at length in the original settlement negotiations, found CSXT's position "totally inconsistent with [its] undertakings as part of the settlement. It strains credibility to suppose . . . that Williams would have settled this case knowing that CSXT would presently refile a new case for overcharges." We agree with the district court's

reading of the original settlement agreement and with the district court's finding that by filing an identical overcharge case against Williams after agreeing to dismiss the same, CSXT breached the May 23rd settlement agreement.[6]

CSXT also asserts that the district court's ruling requiring the parties to enter promptly into the five-year contract is flawed.[7] CSXT believes the five-year contract should have a retroactive commencement date of April 10, 1998, the date upon which the contingency for settlement was removed. CSXT did not present this contention to the district court and raises it for the first time on appeal. In fact, CSXT's counsel argued at the last hearing before the district court on November 16, 1998 that the agreed five-year service under the contract should begin on November 16, 1998.

Issues raised for the first time on appeal are generally not considered absent exceptional circumstances. See *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (allowing consideration of issues first raised on appeal only when failure to do so is plain error or results in miscarriage of justice). The date a contract should begin is not an exceptional circumstance that warrants consideration of the issue in this case.

In conclusion, we are of opinion the district court did not abuse its discretion by enforcing the settlement order in the manner it did.

---

[6]CSXT argues that West Virginia law prohibits waiver of future overpayments. CSXT bases its argument on West Virginia Code § 24A-2-4. § 24A-2-4 prohibits a carrier from receiving or charging greater or less than the rates legally established and filed with the Public Service Commission. W.Va. Code § 24A-2-4. The court acknowledged such supervision by the Public Service Commission and incorporated that into its findings of facts and conclusions of law and its order. Any rate differentials between customers or customer classes are subject to approval by the Public Service Commission. *West Virginia AAA Statewide Ass'n v. Public Serv. Comm'n of West Va.*, 412 S.E.2d 481, 485 (W.Va. 1991).

[7]We do not further address CSXT's argument regarding the rate structure because the district court's order amply covers the issue by recognizing the Public Service Commission's authority over new rates and by requiring tariff interpretation disputes to be submitted to the Public Service Commission.

IV.

CSXT appeals the district court's award of attorneys' fees to Williams. Under the American Rule, each party bears its own costs of litigation unless statutory authority exists for an award of attorneys' fees or an exception to the rule applies. See *Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245-47 (1975). One exception to the rule allows a district court to assess attorneys' fees against a losing party when it has acted in bad faith, vexatiously, or wantonly. See *Aleyska*, 421 U.S. at 258; *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991). In this case, the district court found the following to support its award of attorneys' fees: CSXT willfully breached the settlement agreement by prolonging the negotiations; CSXT refused to pay the invoices submitted by Williams;[8] CSXT filed a new over charge complaint case; CSXT continued to support McLine Transportation ("McLine") in McLine's effort to obtain Public Service Commission approval to operate statewide in West Virginia; and CSXT had an obligation to notify the court that the settlement was in jeopardy. While CSXT may have breached the settlement agreement by refusing to pay Williams' invoices and by refiling its overcharge case, we are of opinion that these actions do not support the award of attorneys' fees to Williams. CSXT's actions do not rise to the level of bad faith required for an award. Furthermore, CSXT's support of McLine's application for approval in the Public Service Commission does not constitute a breach of the settlement agreement. The settlement agreement has no provision requiring CSXT to refrain from supporting such applicants. Additionally, even if McLine obtained statewide authority to operate, CSXT admits McLine would not replace Williams in the areas covered by the settlement agreement. The award of attorneys' fees to Williams is reversed.

V.

Williams appeals the district court's denial of punitive damages. Punitive damages in a breach of contract case are available only in an exceptional case in which the breach amounts to an independent and willful tort. *Goodwin v. Thomas*, 403 S.E.2d 13, 16 (W.Va. 1991); see

---

[8]The court noted the "dramatic disparity" in financial and bargaining power between the two parties as part of this finding.

also *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 526-27 (4th Cir. 1987). We affirm the district court's denial of punitive damages on its reasoning that CSXT's conduct was not sufficient to support such an exceptional award.

Accordingly, the judgment order of the district court entered December 11, 1998 is affirmed in each respect except the award of attorney's fees to the Williams is reversed. The award of costs to the Williams is also affirmed if the brief of CSXT may be taken as contesting that item.

*AFFIRMED IN PART, REVERSED IN PART*